No. 29,601.

JOHN A. SWAN and MARY A. SWAN, *Appellants*, v. THE RIVERSIDE
BATHING BEACH COMPANY, *Appellee*.

(294 Pac. 902.)

Opinion filed January 10, 1931.

*A. L. Billings*, of Independence, for the appellants.

*John Bertenshaw, Kirke C. Veeder*, both of Independence, and *O. W. Julien*, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the parents of Helen Swan to recover for her wrongful death by reason of the negligence of

the defendant, the Riverside Bathing Beach Company, owning and operating a swimming pool or bathing beach in the city of Independence. Various acts of negligence on the part of the defendant, its manager, matron and guards are alleged as the direct and proximate cause of her death by drowning in the swimming pool on Sunday afternoon, August 14, 1927. The answer consisted of an admission as to the death at that time, the maintenance and operation of the pool, the keeping of life-saving guards and attendants, a general denial as to all other allegations and a plea of contributory negligence. The reply was a general denial. The appeal is by the plaintiffs from the ruling of the trial court in sustaining a demurrer to the evidence of the plaintiffs and rendering judgment for defendant for costs. Appellants make no claim of negligence as to the construction of the pool or as to the care and attention given the deceased after her body was discovered on the floor of the pool.

Appellants cite a number of decisions in cases from Kansas and other states as to liability for injuries to children by those maintaining attractive nuisances, and connect the discussion of them with the presentation of the case when it was here before on the question of the sufficiency of the petition. (*Swan v. Riverside Bathing Beach Co.*, 128 Kan. 230, 276 Pac. 796.) Of course, the feature of the necessity of special care and attention to children is in any case where a child is injured or loses its life by the negligence of another, but the question of attractive nuisance is entirely eliminated in this state from cases where the injury or death occurs at or in a modern swimming pool, as was held in the case of *Gorman v. City of Rosedale*, 118 Kan. 20, 234 Pac. 53, and later in *Gilliland v. City of Topeka*, 124 Kan. 726, 262 Pac. 493, where it was held:

"A swimming pool in a public park of a city, constructed of concrete and equipped with the usual swimming-pool accessories, is not a nuisance, although attractive to children." (Syl.)

The appellants have alleged specific omissions and acts of negligence on the part of the defendant, and the sufficiency of the proof must be limited to such allegations instead of permitting the proof to make a *prima facie* case by relying upon the doctrine of *res ipsa loquitur.* (*Byland v. Powder Co.*, 93 Kan. 288, 144 Pac. 251.)

It is urged that it was negligence on the part of the defendant to permit a girl only nine years of age to enter the swimming pool without the special attention of a guard, and if the guards were too busy to give her the necessary attention she should have been ex-

cluded until such time as a special guard might give her such attention. She had been there four times before, was a good swimmer and went anywhere in the pool. Her parents did not accompany her but sent her with Mr. and Mrs. Mitchell, who were taking their daughter three years older, the parents furnishing the necessary entrance fee. The fee was paid by Mrs. Mitchell to Mrs. Wilson, the matron in charge of the office, who saw the girl and furnished her and the Mitchell girl a basket in which to put their clothing and later took the basket and gave them a check for it and passed them into the pool. The water at one end of the pool was two feet deep and at the other about nine feet. Mr. and Mrs. Mitchell went to the other side of the pool and sat there on a bench about six feet from the north side of the pool under the shade of a large umbrella. Was it negligence to permit such a girl to enter the pool under such circumstances without the special attention of a guard? The rule in this respect is expressed in the following paragraphs under the subject of negligence in Corpus Juris:

"The rule that no person is an insurer of the safety of others applies with respect to children, and one whose act or omission has resulted in injury to a child cannot be held liable therefor unless he has been guilty of negligence, involving a breach of duty owed to the child, even though the child be so young as not to be chargeable with contributory negligence." (45 C. J. 701.)

"The rule requiring the owner or person in charge of property to keep it safe for invitees applies, of course, to infant invitees, and, as the characteristics of children are proper matters for consideration in determining what is ordinary care with respect to them, there may be a duty to take precautions with respect to children of tender years which would not be necessary in the case of adults or children who have reached an age when they are able to understand, appreciate, and avoid danger. The owner or person in charge is not, however, an insurer of the safety of infant invitees." (45 C. J. 838.)

The evidence shows that Helen remained in the pool forty-five minutes, the Mitchell daughter, Katherine, and Mrs. Mitchell's sister, Ruby, being with her much of the time, besides about a hundred or more people being in the pool most of the afternoon. After forty-five minutes, Mrs. Mitchell told the girls—that is, Helen and Katherine—to go out and dress. Then she and Mr. Mitchell walked around the pool to the office and dressing room. The girls obeyed and went to the steps of the pool. Helen was in the shallow water at the bottom of the steps when Katherine said to her, "Come on, Helen," and Helen replied, "I think I will go back," or "I will go back for some more swimming." That was the last the testi-

mony shows she was seen alive. It was from ten to twenty minutes from the time Mrs. Mitchell told the girls to go out and dress until Helen was discovered on the floor of the pool near the fountain where the water was about four feet or a little more in depth. Helen was just four feet in height and was discovered on the floor of the pool by another little girl, who pointed her out to Mr. Maily, who immediately picked her up and took her up the steps and there met Mrs. Mitchell and the two girls looking for her. As stated above, no complaint is made as to the attempts and efforts to resuscitate her, but all efforts were in vain. Mr. Maily said he and perhaps a half dozen others had been in the immediate vicinity of where her body was found for about ten minutes prior to finding her, that he had seen and heard nothing to indicate anyone was in danger or distress.

Two Red Cross trained guards were there during that afternoon, one on duty, the other swimming. They testified no outcry or struggle was heard or seen by them during that time. No witness testified to anything occurring that would indicate distress or danger.

When Mrs. Mitchell reached the office and dressing rooms after stopping on the way at the infant bathing pool, outside of and at one corner of the main pool, she did not see Helen and asked the other two girls for her. She looked again in the dressing room and one of the girls went back to the pool to see if a girl wearing a green cap was Helen, then one said to another, "Where is Helen? I can't find her." This was said within the hearing of Mrs. Wilson, the matron, but nothing was said directly to her about not being able to find Helen. Mr. Mitchell was quite hard of hearing and heard one of them standing not far from the matron say, "Where is Helen? I can't find her." Mr. Mitchell said he thought she was around the house there somewhere and that it was five or six minutes after the making of such remark in his hearing and that of the matron before the body was discovered and carried out of the pool.

The evidence affirmatively shows that there was no outcry or alarm of any kind given concerning their inability to find Helen, nor any direct appeal to or request of the matron or the guards to search for her.

The negligence ascribed to the defendant in addition to permitting the girl to enter the pool without the attention of a special guard, as mentioned above, consisted of lack of proper attention by the manager, his failure to instruct his guards, failure to furnish competent and sufficient guards, failure of the manager and guards

to observe Helen when she went back to the pool and rescue her, and the failure of the matron, when she heard they could not find Helen, to institute a search for her and notify the guards to search for her. Was this negligence under all the facts and circumstances? The trial court thought not. Mr. Mitchell thought she was around the house somewhere. None of the party thought of it as necessary to request the matron to do something or make a search. We will conclude the matron heard the inquiry and statement perhaps more than once: "Where is Helen? I can't find her," but we cannot conclude she officially should have been more alarmed and anxious about her whereabouts than those accompanying her. The only expressed thought of her being in the pool was because one of them saw a girl in there wearing a green cap like one Helen had worn, but when it was learned that it was not Helen, no further apparent attention was given to the pool until Mr. Maily was observed carrying the body out of it. The guard who was on duty that afternoon was eighteen years old and was around all the time where he could best see and hear any need of help or assistance. The other guard who was swimming could have seen or heard any indication of distress or danger. Both were Red Cross trained and were told by the manager to do everything to help anyone needing assistance. The manager told them he would not undertake to instruct them as to their duties because they were more efficient than he was.

To constitute negligence under the circumstances of this case there must have been a duty to be performed by the defendant which it failed to perform. Such failure can scarcely be ascribed to the manager or the guards, although it is said by some of the witnesses that they were in different places in or around the pool and sometimes at places they thought not the best for observation of things occurring in the pool. It is obvious that if one position is better than another, it is not negligence to fail to remain all the time in such preferable place because his duty is a supervision of all and every part of the pool, and even if the guard should have been at a place affording less opportunity for observation, it would not be negligence to be there occasionally on the theory that his duty would call him there at times as well as elsewhere.

There is no showing that the number of guards furnished was insufficient. The fact that something occurred that they did not see or hear will not establish that fact, because there were a hundred or more patrons in the pool who evidently did not see or hear

anything indicating distress or danger, for we can safely reason on the humanitarian basis that they would have given an alarm if they had either seen or heard anything that indicated the need of help or assistance.

Appellants urge most strongly the failure of the matron to give the alarm to the guards and join in the search. The argument of the appellants would be forcible and convincing had the intimation of Helen's loss been directed toward the pool; but when one of the number thought she was around the house somewhere, and Mrs. Mitchell looked again and again in the dressing rooms, and the only expressed thought of the pool as a whereabouts was because of a green cap being observed in the pool, the matron could have fully known that Helen was lost and that those with whom she came could not find her, without being negligent, unless the situation were such as to have reasonably given her a thought or intimation that she might possibly still be in the swimming pool. The evidence does not give that thought or suggestion, and if she had so suspected her line of thought would have been different from those who were speaking of the loss in her presence and hearing.

Appellants cite the case of *Brotherton v. Manhattan Beach Improvement Co.*, 50 Neb. 214, in support of their claim of negligence on the part of the defendant, but the facts as set out in the original case and in that case on rehearing were very different from those in this case. There the young companion of the one who was missing, within two minutes, reported the matter to the officers in charge of the beach who had a boat there in readiness for use for such purpose, but had no man or guard to use it, and instead of using it under the companion's direction as to where his friend was last seen in the water, they advised him to search the land and they coolly watched the result of such search without making any effort to use the boat or to search the water where the young companion informed them he had been last seen.

The facts in the case at bar are very different from those in the case of *Larkin v. Saltair Beach Co.*, 30 Utah 86, where the bathing beach company entirely failed to provide for the rescue of bathers and on being notified that the deceased was in danger of drowning and was missing, sent no one in search or to his relief until several hours had elapsed, and the court held it was negligence not to "keep some one on duty to supervise bathers and to immediately rescue any apparently in danger, and to make prompt and reason-

able efforts to recover any of such patrons on being informed that they were missing or in danger."

Other authorities cited by appellants show failure to furnish guards or act promptly when notified of danger. The evidence in this case does not show either state of facts.

The supreme court of Illinois, in the case of *Bertalot v. Kinnare*, 72 Ill. 52, set aside a verdict where the plaintiff had failed to prove how the deceased "happened to meet the disaster which resulted in his death, or as to what negligence, if any there was, contributed thereto or was the proximate cause thereof." There the deceased was found on the floor of a swimming tank used for instruction in swimming. He was last seen alive ten or fifteen minutes before the lifeless body was found on the bottom of the pool.

"In an action to recover for death through the alleged negligence of defendant, where the evidence shows only that decedent, a boy fourteen years of age, was playing in a crowded swimming pool conducted by defendants on one afternoon and his dead body was found in another part of the pool the next morning and that death was caused by asphyxiation, no inference can be drawn that by act or omission of defendant or any of its employees the boy was placed in a position of danger which caused his death or that any greater care by defendant could have averted the accident." (*Maher v. Madison Square Garden et al.*, 242 N. Y. 506, syl. See, also, cases cited in 22 A. L. R. 635.)

We conclude appellants failed to establish the allegations of their petition as to negligence on the part of the defendant which was the proximate cause of the death of the daughter of the appellants. From the evidence it would appear more like an unavoidable accident for which no one is directly to be blamed. (*Tawney v. Railway Co.*, 84 Kan. 354, 114 Pac. 223.) Some evidence was introduced on cross-examination to show the death was not caused by drowning, but while that was alleged, it is not necessary in this review to be determined. Neither is it necessary to decide the question of contributory negligence argued in the briefs. All we do determine is that there was no error in the ruling of the trial court in sustaining the demurrer to plaintiff's evidence as insufficient to establish negligence on the part of the defendant.

The judgment is affirmed.