(562 P.2d 464)

No. 48,241

ROLF GERCHBERG, by His Father and Next Friend, Ralph Gerch-berg, *Appellant,* v. RODNEY LONEY, a Minor, ROY LONEY, MRS. ROY LONEY and CHARLES LONEY, *Appellees.*

Opinion filed March 11, 1977.

*John W. Lungstrum* of Stevens, Brand & Lungstrum, of Lawrence, for the appellants.

*J. H. Eschmann* of Ascough, Bausch and Eschmann, of Topeka, for the appellees.

SWINEHART, J.: This case was submitted to the trial court by the parties and attorneys stipulating that the court would have before

it at the close of plaintiff's evidence those facts found in the depositions of Ralph Gerchberg, Louise Gerchberg, Mrs. Roy Loney, Sr., Cleo Williams; interrogatories of Rodney Loney and Charles Loney; and the affidavit of Rolf Gerchberg. All the documents are of record. Additionally, it was stipulated that the plaintiff, a minor, would testify:

". . . [H]e was attracted to the Loney property at the time and on the date in question by smoke coming from the open barrel on the Loney property; he initially saw no flames coming from the barrel and he was too short to see into the barrel without standing on his tip toes; upon coming to the barrel he picked up some papers from the stack beside the barrel and put them over the side into the barrel as he had seen Rodney Loney do; although he still saw no flames, he saw an increase in the amount of smoke coming from the barrel; he again picked up papers from the stack beside the barrel, stood on his tip toes to drop them into the barrel and as he dropped the papers into the barrel he saw flames for the first time inside the barrel, coming up the sides of the barrel; and he did not understand the danger involved in the conduct in which he was engaged; and, moreover, with the further exception that additional testimony would be presented concerning the extent, nature and gravity of the injuries and damages alleged to have been suffered by the plaintiff in this matter."

The trial court then considered the case on these facts and defendants' motion for directed verdict at the close of plaintiff's evidence. The trial court sustained defendants' motion for directed verdict under K.S.A. 60-250. The trial court found the following to be the facts and conclusions of law:

"1. On and prior to March 14, 1970, the Roy Loneys kept a 55-gallon metal barrel which they used as an incinerator and which was located on the Loney side of the concrete paved alley which lies behind the Gerchberg home located at 926 Indiana and the Loney home located at 927 Louisiana.

"2. At all times relevant hereto, Mr. and Mrs. Roy Loney owned a life estate in the property at 927 Louisiana which property was occupied by the Roy Loneys, by their son, Charles Loney, and by his son, Rodney, who is the grandson of the Roy Loneys. All of the Loneys just mentioned are defendants in this case. On March 14, 1970, Rodney Loney was ten years of age.

"3. At all times relevant hereto the home at 926 Indiana was occupied by plaintiff, Rolph Gerchberg, and his parents, Ralph and Louise Gerchberg. On March 14, 1970, plaintiff was five and a half years of age.

"4. For some time prior to March 14, 1970, plaintiff frequently played with Rodney in the Loney backyard. In order to get out of his backyard plaintiff would either climb the fence by which it was enclosed or he would exit through a gate to the driveway and then through the carport to the alley.

"5. On March 14, 1970, Mrs. Loney asked Rodney to burn the papers which had been accumulated in a box at the Loney home and when Rodney went to the incinerator carrying the box of papers, plaintiff came over and helped and

watched Rodney burn papers for a while and then left to go with his mother to pick up a friend, Mark Albertson, who was coming over to plaintiff's home to play. As plaintiff's mother drove into the alley with plaintiff to go after plaintiff's friend it was about 10:30 a.m. and smoke was coming from the Loney's incinerator. When plaintiff's mother returned with plaintiff and his friend Mark, she drove into the Gerchberg driveway off of Indiana Street and parked in the carport near the alley where she and the boys got out of the car following which she told them to play in the Gerchberg yard and went on into the house. Shortly after plaintiff left the Loney incinerator to go after his friend, Rodney left the Loney place with his father. At the time Rodney left with his father the paper placed in the incinerator by Rodney had burned down but was still smoking.

"6. About thirty minutes after plaintiff and his friend Mark arrived at the Gerchberg home on March 14, 1970, plaintiff decided to go back to the Loney incinerator after noticing smoke coming therefrom. Upon coming to the barrel used as an incinerator plaintiff tried to look in and by standing on his toes could see no flame. Plaintiff then picked up some papers from the box beside the barrel and put them over the side into the barrel as he had seen Rodney do. This produced more smoke but no flame after which plaintiff again picked up papers from the box beside the barrel, stood on his tip toes to drop them into the barrel and as he did this he saw flames for the first time inside the barrel, coming up the sides of the barrel.

"7. Shortly after plaintiff saw flames coming up the sides of the barrel, the grass in the Loney backyard and plaintiff's trousers caught fire. Plaintiff then ran to the back screen door of the Loney home and shouted fire, fire, fire. At this time no one was at the Loney home except Mrs. Loney. Mrs. Loney was and is an elderly lady whose left eye had been removed and whose vision out of her right eye was so impaired that she could 'see only about five feet and see who people were.' When Mrs. Loney heard plaintiff at the door she grabbed a mop or a broom and left the kitchen via the back porch for her backyard. Prior to this Mrs. Loney asked plaintiff who started the fire and plaintiff said 'I did, Mrs. Loney, I did.' On the day in question Roy Loney was out of the state on a preaching mission for his church.

"8. When Mrs. Loney reached her backyard there were many small fires throughout the grass in that area and she set about trying to put them out not observing that plaintiff's trousers were on fire or that he needed help. About this time Mr. Williams, who was working on a project in his backyard, which is immediately north of Gerchberg's, heard plaintiff cry out and observing smoke and fire, Mr. Williams hurried to the Loney backyard where he quickly removed the burning trousers from plaintiff at about which time plaintiff's mother arrived on the scene, and with Mr. Williams' help, carried plaintiff into the Gerchberg home. Neither Mrs. Gerchberg nor Mr. Williams said anything to Mrs. Loney nor did she speak to them while plaintiff's trousers were being removed and plaintiff was being carried out of the Loney backyard. Mrs. Loney had been unaware that plaintiff's trousers were on fire or that plaintiff needed help until she saw Mr. Williams and Mrs. Gerchberg in her backyard.

"9. Through the years many of the residents in the 900 block of Indiana and Louisiana including the Loneys had used incinerators of the type used by the Loneys along the alley for the purpose of burning trash. However on and for some

time prior to March 14, 1970, the Gerchbergs and the Williamses had not burned trash on their premises. The Ordinances cited and relied upon by counsel are incorporated herein by reference thereto. On and prior to March 14, 1970, plaintiff and other children in the neighborhood had been welcome to play with Rodney in the Loney yard.

"10. How the fire got out of the incinerator and into the grass and onto plaintiff's pants is not clear. Plaintiff says the wind blew burning trash from the barrel which ignited the grass and his pants and, although most of the evidence places the wind velocity in the moderate category, it is likely that the burning papers got out of the barrel initially by plaintiff removing them as a reaction to the flame which he saw as he was putting more papers in when the first paper he had inserted had only increased the amount of smoke. In any event after the burning paper got out of the barrel it set fire to the grass, the remaining unburned paper in the box which Rodney had carried out, and the sticks which were used to stir the paper in the barrel to make it burn. And no doubt in his efforts to stop the fire from spreading plaintiff's trousers caught fire as a result of which plaintiff sustained 3rd degree burns on his legs which required extensive skin grafting and other medical attention for which injuries plaintiff brings this suit for damages by his father as next friend.

"From the facts it is concluded that defendants' motion for directed verdict should be sustained. At the time of the fire in question, which was activated and released from the incinerator by plaintiff, defendant Roy Loney was out of the state, defendants Charles Loney and Rodney Loney had been gone from the area for upwards of an hour and defendant Mrs. Roy Loney was in the kitchen of her home, unaware of plaintiff's presence in the Loney backyard until she heard him say fire, fire, fire from the back porch screen door. In its dormant state, whatever potential for fire that remained in the Loney incinerator did not approach being an attractive nuisance, nor under the circumstances can it be said that any of the defendants committed negligence or were guilty of wanton conduct. At best plaintiff was a mere licensee when he entered the Loney backyard. After being made aware of the fire by plaintiff Mrs. Loney did all she was capable of doing in light of her extremely limited vision. Under the controlling facts plaintiff has failed to establish liability on the part of any of the defendants for the injuries sustained by plaintiff from the fire in the Loney backyard on March 14, 1970."

The plaintiff appeals the foregoing decision, claiming a total of nine trial errors. Some of them are repetitious and go to the same basic issues. We feel that appellant's point number three is controlling:

"3. The trial court erred in finding that the defendants owed no duty of care to plaintiff as a licensee other than to be free from gross and wanton negligence because the doctrine of attractive nuisance was applicable."

It is apparent in this case that plaintiff is not an invitee, but rather a licensee. An injured licensee in Kansas is only entitled to the occupier of the land avoiding willful, intentional or reckless injury to the individual. (*Lemon v. Busey,* 204 Kan. 119, 461 P.2d

145, and *Graham v. Loper Electric Co.*, 192 Kan. 558, 389 P. 2d 750.) Negligent injury to a licensee will not create a cause of action unless it is equivalent to willfulness or wantonness. A mere licensee takes the premises as he finds them, and assumes all risks incident to the condition of the premises.

Plaintiff in this case is barred from recovery unless facts show he comes within one of the exceptions to the traditional classification system which is now established law in Kansas. One of the exceptions to the rule relates to an attractive nuisance and said exception is stated as follows in *Brittain v. Cubbon*, 190 Kan. 641, 378 P. 2d 141, Syl. 2 and 3:

"The attractive nuisance doctrine is based upon the negligence of the proprietor who fails to protect young children attracted to his premises by some dangerous thing or place artificially created, and where he should have anticipated that the children would be lured into the danger. (Following *Galleher v. City of Wichita*, 179 Kan. 513, 296 P. 2d 1062, Syl. 3.)

"One of the essential elements of the doctrine of attractive nuisance is that the danger present must be of a latent character, but a latent or concealed danger extends to things hidden from the appreciation of persons injured, as well as to things hidden from the eye."

Restatement (Second), Torts § 339 p. 197 (1965) deals with "Artificial Conditions Highly Dangerous to Trespassing Children" in the following manner:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

In *Brittain v. Cubbon*, supra, at page 646, the Kansas Supreme Court cited with approval 38 Am. Jur., Negligence, § 142, pp. 802-804, as follows:

". . . While the doctrine has been variously stated, courts which accept it

generally are in substantial accord with the proposition that one who maintains upon his premises a condition, instrumentality, machine or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction. Within the limitations hereinafter considered, the doctrine is for the benefit of a meddling, as well as of a trespassing, child. The result of such doctrine is that one is negligent in maintaining an agency which he knows, or reasonably should know, to be dangerous to children of tender years, at a place where he knows, or reasonably should know, children of tender years are likely to resort, or to which they are likely to be attracted by the agency, unless he exercises ordinary care for the protection of such indiscreet and youthful persons."

## Further, at 57 Am. Jur. 2d, Negligence, § 124, p. 475:

". . . In any case, children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calcuate [sic] upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken." (Footnote omitted.)

The facts in this case indicate that the defendants have used this 55-gallon barrel for a long period of time to burn trash; that they have authorized and directed their ten-year-old grandson to burn said trash; that oftentimes plaintiff, five and one-half years of age, had been invited over to play in the yard and had done so on many occasions; that on the day of the accident the grandson had burned papers at the trash barrel, commencing about 9:00 to 9:30 a.m., and plaintiff was there and watched. At approximately 10:30 a.m., plaintiff left with his mother to pick up a friend. Shortly after the plaintiff left, defendant grandson (Rodney) and his father left, leaving the fire in the barrel unattended.

Between 11:00 and 11:30 a.m., plaintiff returned home with his mother and was soon back in defendants' yard, attracted by the smoke coming from the barrel. The contents of the barrel were still smoldering and smoking. Plaintiff initially saw no flames in the barrel. He proceeded to pick up papers from a stack near the barrel and place the papers in the barrel. He still saw no flames. He proceeded to place more papers into the barrel, and at this time, while standing on tiptoes, he first noticed flames coming up the sides of the barrel. Soon thereafter, the fire somehow spread to the grass where plaintiff was standing and to plaintiff's pants

legs, causing his injuries. Plaintiff's testimony, which must on appeal be accepted as absolute truth, was that he "did not understand the danger involved in the conduct in which he was engaged."

The plaintiff's stipulated evidence in this case was considered by the trial court on a motion for directed verdict, as provided for in K.S.A. 60-250, and not as a motion by the defendants for an involuntary dismissal, as provided for in K.S.A. 60-241 (*b*). When plaintiff's evidence is so considered by the court, the general rules of law provide that the same shall not be sustained unless the evidence is insufficient to support a verdict for a party against whom it is directed. The court must consider the evidence and all inferences that may be drawn therefrom in the light most favorable to the plaintiff. (*Carter v. Food Center, Inc.,* 207 Kan. 332, 485 P.2d 306.)

The evidence in this case as presented to the trial court, when challenged by a K.S.A. 60-250 motion on the theory of attractive nuisance as applied to the liability of an occupier of land to a licensee thereon when said licensee is a five-and-one-half-year-old child, is sufficient to support a verdict in favor of plaintiff against defendants. We feel the court's action in sustaining defendants' motion was improper. We are not saying the doctrine of attractive nuisance must be found controlling. Rather, we simply hold that there is sufficient evidence to require that the attractive nuisance question be submitted to the jury for resolution.

The plaintiff's points on appeal relative to public policy and violation of provisions of the fourteenth amendment are considered by the court and found to be without merit, when viewed in light of recent supreme court decisions finding that the traditional classification rules and related exceptions are still viable, and should not, at this time, be set aside and held for naught.

The remaining question of error raised by appellant goes to whether or not the appellees' conduct herein constituted gross and wanton negligence. If it did, appellees would be liable under Kansas law to appellant, even though a licensee. (*Graham v. Loper Electric Co.,* supra; *Backman v. Vickers Petroleum Co.,* 187 Kan. 448, 357 P. 2d 748.) This issue has been considered, and it is found after examination of the stipulated evidence and the law, as previously set forth herein, that the trial court should be affirmed in its conclusion of law that appellees' acts did not constitute gross and wanton negligence.

Taking the evidence as presented by plaintiff and considered in accordance with rules applicable to a motion for directed verdict under K.S.A. 60-250, it appears that the court erred in sustaining said motion. The judgment is reversed and the case is remanded for further proceedings in accordance with the opinions expressed herein.

PARKS, J., dissenting: As I understand the holding of the majority, it is that the smoldering fire in the incinerator could be found by a jury to be an attractive nuisance. I disagree.

As the majority notes, an essential element of the doctrine of attractive nuisance is that the potential for injury must be of a "latent" character, *i.e.*, it must be such that children will not see or appreciate the danger involved. I cannot place a trash fire in that category, especially when confined to an incinerator. Children far younger than the five-and-one-half-year-old plaintiff are expected to appreciate the dangers of fire. Neither can I find that it fits the other accepted requirements that the "nuisance" be unusual and especially attractive to children.

Our supreme court has faced this problem on several occasions. In *Bruce v. Kansas City*, 128 Kan. 13, 276 Pac. 284, the court held that a smoldering fire in the city dump was not an attractive nuisance. Had it been one, the city would have been liable for injuries sustained by a five-year-old boy who was burned in the hot ashes. Similarly, in *Rhodes v. City of Kansas City*, 167 Kan. 719, 208 P. 2d 275, when a six year old was burned, a smoldering fire under a pile of debris was held not to be an attractive nuisance.

Most persuasive, in my view, is *Rose v. Board of Education*, 184 Kan. 486, 337 P. 2d 652. There, a six-year-old boy, on a school playground, stepped into live coals resulting from the burning of a stump, which was left unextinguished and unattended. The court found that leaving the stump burning and unattended might well have been negligence, but fell short of the maintenance of a nuisance. The court emphasized that it was dealing with an isolated instance of a temporary nature as opposed to a condition created and maintained for an extended period of time.

The most nearly comparable case in which a fire was found to be, at least potentially, an attractive nuisance is *Carter v. Skelly*

*Oil Co.*, 191 Kan. 474, 382 P. 2d 277. There, a bare majority of the court found a burning oil slush pit could be an attractive nuisance and a petition so alleging was not demurrable. The child there was attracted by an oily rope protruding from a slush pit, became entangled in it, and because of the steep sides and crumbly bank, fell in. Here we have no rope, and no vertical sides or crumbly banks creating a virtual trap. Even there, three members of the court felt that because it was an open fire the danger was patent and no attractive nuisance existed.

Courts in other jurisdictions generally hold, for various reasons, that a controlled fire is not an attractive nuisance. Thus, the West Virginia court held:

"A controlled fire used to destroy trash and other refuse, is not a dangerous instrumentality or agency such as is required to be guarded against the possibility that children may be attracted thereby and suffer injury therefrom." (*Harper v. Cook*, 139 W. Va. 917, 82 S.E. 2d 427, Syl. 3 [1954], following *Tiller v. Baisden*, 128 W. Va. 126, 35 S.E. 2d 728 [1945].)

The Colorado Supreme Court reached a similar holding in *Dunbar v. Olivieri*, 97 Colo. 381, 50 P. 2d 64 [1935]. At page 386, the court said:

". . . [I]t is obvious that in the present case, under the evidence before us, the injured boy was not attracted by anything heretofore deemed by this court to be such a nuisance. Neither his own testimony nor any other in the record brings the case at bar within the attractive-nuisance principle. The rubbish-burning device was on the defendant's premises. . . ."

In *Dunbar*, the Colorado Supreme Court quoted from *Hayko v. Colo. & Utah Coal Co.*, 77 Colo. 143, 146, 235 Pac. 373, 374, 39 A.L.R. 482 [1925]:

" 'It will not do to say that every attractive thing is sufficient to charge a defendant with negligence in enticing children to trespass, because there is nothing that can be said not to be attractive to a child. . . . While he owes a duty to one invited, and some attractive agencies may amount to an invitation to a child, yet such an agency must invite to trespass and not merely after trespass, and must be an unusual thing, unusually, extraordinarily attractive. . . .' " (*Dunbar v. Olivieri*, supra at 386.)

In *Goss v. Shawnee Post No. 3204, V.F.W. of U.S.*, 265 S.W. 2d 799 (Ky. 1954), the court said:

"Under our construction of the rule we find that such a commonplace thing as a small controlled trash fire on one's own property does not constitute an attractive nuisance. It will not do to say that every attractive thing is sufficient to charge a

defendant with negligence in enticing children to trespass because most things are alluring to infant children and subject to their curiosity." (p. 801.)

As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different. (See *Tavis v. Kansas City,* 89 Kan. 547, 553, 132 Pac. 185.)

In the case at bar, there was nothing novel or dangerous about the incinerator or its use. The plaintiff had been there earlier that day and had watched and helped Rodney Loney. The fire was wholly on defendants' own property and to reach it plaintiff came under circumstances that made him a licensee. Therefore, the defendants owed him no duty to guard him from the fire. (*Lentz v. Schuerman Building & Realty Co.,* 359 Mo. 103, 220 S.W. 2d 58 [1949].) The fire in its dormant stage was not dangerous until it was activated by the plaintiff.

Under the facts and circumstances of this case, the doctrine of attractive nuisance is not applicable. I would affirm for the reasons stated herein, and hold that the trial court properly sustained the motion for a directed verdict.

HARMAN, C.J., and FOTH, J., join in the foregoing dissent.