No. 71,816

JOHN O. MOZIER, JR., and NANCY G. MOZIER, *Plaintiffs*, v. CHARLES PARSONS and BRENDA PARSONS, *Defendants*.

(887 P.2d 692)

Opinion filed January 4, 1995.

*Mark C. Owens,* of Bennett, Lytle, Wetzler, Martin & Pishny, L.C., of Prairie Village, argued the cause, and *Peter A. Martin,* of Redstone, Colorado, was with him on the briefs for plaintiffs.

*Zackery E. Reynolds,* of Fort Scott, argued the cause and was on the brief for defendants.

The opinion of the court was delivered by

HOLMES, C.J.: This case is before the court on a question certified by the United States District Court for the District of Kansas pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*

United States District Judge G. T. Van Bebber has certified to this court the following question:

"In a negligence action involving injury to a child, can the attractive nuisance doctrine be used to establish liability when the injury occurred in a residential swimming pool?"

The relevant facts of this case have been outlined in the certifying court's Memorandum and Order as follows:

"On April 21, 1991, the Moziers were social guests at the home of defendants Charles and Brenda Parsons. The Parsons had completed installation of a swimming pool on their property just two weeks earlier. Those present had been swimming in the pool during the afternoon and then returned to the house for supper. Some time after supper Emily left the house. She was later found floating in the pool. She was not breathing and had no heart beat. Resuscitation efforts at the pool side and the hospital served only to restore breathing with the aid of a respirator. Heart beat was restored after emergency treatment at the hospital. Emily never regained consciousness, but did blink her eyes and make some slight movement. She died two days later.

"Emily was a generally well-behaved $3^1/_2$ year old girl who listened to her parents and other adults. On the day of the accident, Emily was told by her parents and Brenda Parsons not to go near the pool without an adult. Emily was old enough to understand what that meant. Emily's parents were present at the Parsons' home at all times that day with Emily, and had not specifically entrusted the supervision of Emily to the Parsons. At the same time, both families informally shared responsibility for supervising each other's children.

"The Parsons' home is located on a 60 acre tract in rural Bourbon County, just outside of Fort Scott, Kansas. The nearest house is approximately a quarter of a mile away, and their pool is shielded from public view by the house. The Parsons did not install a fence or any other safety devices at the time their pool was completed. The doors leading from the house to the pool area had latches that were out of Emily's reach, but they were not locked or latched at the time of the accident. There had been no injuries at the pool prior to this accident.

"Prior to installing the pool, the Parsons discussed the desirability of a fence as a safety measure with Kendall Baumann, the pool salesman and installer. The Parsons ultimately decided against installing a fence because of the cost, the fact that there were no neighbors nearby, and information that they had received indicating that a fence was not required by their insurer. Baumann supplied the pool, but Charles Parsons acted as owner-contractor. Baumann also described other safety devices such as door locks and alarms which would alert residents when someone left the house. Baumann furnished the Parsons with safety pamphlets which contained information regarding the propensity of children to be attracted to pools. The Parsons finally did install a fence in 1993 after the birth of their youngest child, at a cost of $800.00."

The plaintiffs filed both a wrongful death and a survival action against defendants, seeking recovery for the injury and death suffered by their three-and-one-half-year-old daughter. The two actions were consolidated by the trial court. The defendants moved for summary judgment, arguing in part that plaintiffs could not establish willful or wanton negligence on their part as required in cases involving negligent injury to licensees. The plaintiffs re-

sponded, asserting the evidence was sufficient to require that the "attractive nuisance doctrine" question be submitted to the jury, thus raising the standard of care owed by the defendants to one of reasonable care. The district court agreed and denied defendants' motion for summary judgment. Upon defendants' subsequent motion, the district court agreed to certify the question of law before us for consideration.

Before turning to the certified question, review of certain basic principles and background relevant to our discussion is deemed advisable. On numerous occasions this court has set forth the applicable duty of care owed by an occupier of land to persons entering thereon. In *Gerchberg v. Loney*, 223 Kan. 446, 448-49, 576 P.2d 593 (1978), the court summarized those duties as follows:

"Under the present law of Kansas a trespasser is one who enters on the premises of another without any right, lawful authority, or an express or implied invitation or license. The possessor of premises on which a trespasser intrudes owes a trespasser the duty to refrain from wilfully, wantonly, or recklessly injuring him. [Citations omitted.]

"A licensee is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, or by operation of law, so that he is not a trespasser thereon. The possessor of premises on which a licensee intrudes owes a licensee the duty to refrain from wilfully or wantonly injuring him. [Citations omitted.] . . .

"Under the law in this jurisdiction a social guest has the status of a licensee and his host owes him only the duty to refrain from wilfully, intentionally, or recklessly injuring him. [Citations omitted.]

"An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee. The possessor of premises on which an invitee enters owes a higher degree of care, that of reasonable or ordinary care for the invitee's safety. This duty is active and positive. It includes a duty to protect and warn an invitee against any danger that may be reasonably anticipated."

In the recent decision of *Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303 (1994), this court abolished the distinction between invitees and licensees, and held that the duty owed by an occupier of land to both categories of plaintiffs is one of reasonable care under all the circumstances. However, the change in law is to be

applied prospectively from the date of the decision and thus does not apply to the facts of this case, which took place in 1991.

In refusing to grant defendants' motion for summary judgment, the district court concluded that sufficient evidence was present to submit the case to a jury on the theory of attractive nuisance. In asserting that the attractive nuisance theory did not apply, the defendants proposed two principal arguments. First, they maintained that the theory was limited to trespassers only, and as the decedent was an invited guest or licensee and not a trespasser, the theory was not applicable. Next, defendants contended that Kansas courts have held that a residential swimming pool is never an attractive nuisance. Specifically, defendants relied upon this court's ruling in *McCormick v. Williams,* 194 Kan. 81, 397 P.2d 392 (1964), where the court determined that a residential swimming pool was not an attractive nuisance under the facts of the case. In dismissing defendant's first argument, the district court cited to one case where this court held that the attractive nuisance theory was applicable when the injured child was a licensee and not a trespasser. See *Gerchberg v. Loney,* 223 Kan. 446. The district court also concluded that the language in *McCormick* regarding swimming pools, relied upon by the defendants here, was "dicta" and "would not be followed by Kansas courts today."

In *Gerchberg,* we stated the elements of the attractive nuisance theory as follows:

"A possessor of land is subject to liability for bodily harm to children intruding thereon caused by some condition that he maintains on the premises if:

"(1) the possessor knows, or in the exercise of ordinary care should know, that young children are likely to trespass upon the premises, and

"(2) the possessor knows, or in the exercise of ordinary care should know, that the condition exists and that it involves an unreasonable risk of bodily harm to young children, and

"(3) the children because of their youth either do not discover the condition or understand the danger involved in coming into the dangerous area, and

"(4) one using ordinary care would not have maintained the condition when taking into consideration the usefulness of the condition and whether or not the expense or inconvenience to the defendant in remedying the condition would be slight in comparison to the risk of harm to children." 223 Kan. at 447-48.

See PIK Civ. 2d 12.40; Restatement (Second) of Torts § 339 (1963).

*Gerchberg* was before this court on a petition for review from a decision of the Court of Appeals in *Gerchberg v. Loney,* 1 Kan. App. 2d 84, 562 P.2d 464 (1977). In *Gerchberg,* a five-year-old boy was severely burned when he went upon a neighbor's property and started playing with and around the neighbor's trash burner. Earlier in the day the neighbor's 10-year-old son had been burning trash, and there was still smoke coming from the trash burner when the plaintiff entered upon defendant's premises, tried to throw papers into the trash burner, and somehow set himself on fire. Although this court accepted the agreement of the parties that the plaintiff was a licensee, the facts as set forth in considerable detail by the Court of Appeals would certainly have supported a determination that the young boy was in fact a trespasser. 1 Kan. App. 2d at 85-88. However, based upon the question now before us, we do not consider the status of the Mozier child, as a trespasser or licensee, to be controlling.

What is now known as the attractive nuisance doctrine or theory of liability was first recognized in Kansas in *K.C. Rly. Co. v. Fitzsimmons,* 22 Kan. 686 (1879). In *Fitzsimmons,* a 12-year-old boy was injured while playing upon a railroad turntable located in an open pasture. On appeal by the railroad the court stated:

"No person has a right to leave, even on his own land, dangerous machinery calculated to attract and entice boys to it, there to be injured, unless he first takes proper steps to guard against all danger; and any person who thus does leave dangerous machinery exposed, without first providing against all danger, is guilty of negligence. It is a violation of that beneficent maxim, *sic utere tuo ut alienum non laedas.* It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored . . . ." 22 Kan. at 691.

In later years the theory of liability recognized in the "turntable" cases came to be known as the attractive nuisance exception to the willful, wanton, or reckless conduct required for recovery by a child trespasser. While the strict requirement that the injured child be at least a technical trespasser has been relaxed somewhat, other elements of the attractive nuisance theory remain viable.

The first Kansas case to consider whether a swimming pool fell within the attractive nuisance theory was *Gilliland v. City of Topeka,* 124 Kan. 726, 262 Pac. 493 (1928). In *Gilliland,* a six-year-

old boy drowned in a swimming pool in a public park in Topeka. The plaintiff asserted liability on the part of the City, alleging "the swimming pool with its equipment and appurtenances was a nuisance attractive to children." 124 Kan. 726. The court discussed the turntable cases and held:

"The swimming pool was doubtless attractive to children, but it was not a nuisance. . . . .

"A swimming pool forming one of the public attractions in a city park does not belong in the same class with the places regarded as attractive nuisances within the rule of the turntable cases, as that rule is applied by this court." 124 Kan. 726, 727.

The holding in *Gilliland* was followed shortly thereafter in *Warren v. City of Topeka*, 125 Kan. 524, 265 Pac. 78 (1928), wherein plaintiffs sought recovery for the drowning of their 12-year-old daughter in a swimming pool at Gage Park in Topeka.

Three years later, in *Swan v. Riverside Bathing Beach Co.*, 132 Kan. 61, 294 Pac. 902 (1931), the parents of a nine-year-old girl brought an action to recover for the drowning death of their daughter. The defendant owned and operated a swimming pool in the city of Independence. In an appeal from an order sustaining a demurrer to the petition, one of the theories relied upon by the plaintiffs was that the pool constituted an attractive nuisance. This court, relying upon the decision in *Gilliland*, summarily disposed of that argument, stating:

"Appellants cite a number of decisions in cases from Kansas and other states as to liability for injuries to children by those maintaining attractive nuisances, and connect the discussion of them with the presentation of the case when it was here before on the question of the sufficiency of the petition. [Citation omitted.] Of course, the feature of the necessity of special care and attention to children is in any case where a child is injured or loses its life by the negligence of another, but the question of attractive nuisance is entirely eliminated in this state from cases where the injury or death occurs at or in a modern swimming pool . . . ." 132 Kan. at 62.

In *Stroufe v. Garden City*, 148 Kan. 874, 84 P.2d 845 (1938), a 14-year-old boy drowned allegedly as a result of a drainpipe being left uncovered in a public swimming pool, resulting in "a suction or swift current" which attracted young children. The court held in part: "[T]he draining of the water from the pool

through a pipe which had no grating or guard over the end of it did not create such an attractive nuisance as to make the city liable in damages for the death of a boy who went there to play." Syl.

*McCormick v. Williams*, 194 Kan. 81, is the only Kansas case we have located which applies directly to a residential swimming pool. In *McCormick*, a six-and-one-half-year-old boy drowned in a residential swimming pool. The pool was located in defendant's backyard which was surrounded by a two and one-half- to three-foot high picket fence. The pool itself was enclosed by a six-foot high fence; however, the gate was open at the time of the accident. Snow tracks leading to the pool established that the child had entered defendant's backyard through the gate of the picket fence. At the time of the accident, the pool contained six feet of water which was covered by a layer of both ice and snow. Apparently, the child broke through the ice underneath the diving board; his body was found at the bottom of the pool.

In determining whether the evidence was sufficient to establish liability under the attractive nuisance theory, this court stated in pertinent part:

"As a direct approach to the question involved, it may be suggested that this court has squarely held that a swimming pool does not belong in the same class with instrumentalities regarded as attractive nuisances, and that the question of attractive nuisance is entirely eliminated in this state from cases where the injury or death occurs at or in a modern swimming pool.

"In *Gilliland v. City of Topeka*, 124 Kan. 726, 262 Pac. 493, we held as a matter of law:

'A swimming pool in a public park of a city, constructed of concrete and equipped with the usual swimming-pool accessories, is not a nuisance, although attractive to children.' (Syl.)

"Again in *Swan v. Riverside Bathing Beach Co.*, 132 Kan. 61, 294 Pac. 902, we repeated:

'The rule announced and stated in *Gorman v. City of Rosedale*, 118 Kan. 20, 234 Pac. 53, and *Gilliland v. City of Topeka*, 124 Kan. 726, 262 Pac. 493, [is] followed to the effect that a swimming pool constructed and equipped in the usual modern manner is not a nuisance, although attractive to children.' (Syl. 1.)" 194 Kan. at 82-83.

After discussing various elements of the attractive nuisance doctrine, the court concluded:

"It is necessary that the instrumentality alleged to be an attractive nuisance should have been so situated as to entice the child onto the premises before liability could be imposed. It is not sufficient that it attract him after he had already become a trespasser. It was established by the evidence in this case that the swimming pool could not be seen from the street or sidewalk where the gate to the back yard was located.

"Unfortunate as the accident to the child may be, a case must not be determined on sympathy rather than sound principles of law. A higher degree of care for the protection of a trespassing child should not be imposed on a property owner than is expected of a parent or custodian. Rules should not be adopted which, if carried to their logical conclusion, would make a property owner an insurer of a trespassing child against all injury. Such rules would make the ownership of property and modern conveniences well-nigh intolerable." 194 Kan. at 84.

Following our decision in *McCormick*, there was a lull of nearly 30 years before this court was again called upon to consider the relationship of the attractive nuisance doctrine to swimming pool injuries. In *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 875 P.2d 949 (1994), a six-year-old child sustained serious injuries after falling into a closed swimming pool and nearly drowning. The pool was a public accommodation for residents of a mobile home park and was open during the summer months. At the time of the accident the pool had been closed for the season; however, three to four feet of murky water, algae, and leaves had collected in the pool, making both the bottom and sides of the pool slippery. The pool was surrounded by a five-foot high chain link fence. The injured child had climbed over the fence and entered the pool to retrieve his baseball cap which had been thrown into the pool by his friend. Although *Kerns* involved numerous issues, including claims of products liability and violation of city ordinances, the issue of attractive nuisance was also raised. In concluding that the attractive nuisance doctrine was not applicable, the *Kerns* court focused on elements of the doctrine which were lacking, reaffirming our prior holding in *McCormick*. In relevant part, the court stated:

"Although we have refused to categorically exclude swimming pools from application of the attractive nuisance doctrine, we have recognized that in many cases swimming pools are not, as a matter of law, attractive nuisances. *Factors that can be considered include whether the landowner knew children frequent*

the area where the pool is located and whether the condition of the pool is so unusual that the interest of the child is enticed. *McCormick v. Williams,* 194 Kan. 81, 82-84, 397 P.2d 392 (1964). The *McCormick* court specifically stated it was not sufficient that the minor was attracted to the nuisance *after* an act of trespass occurred; the minor must have been enticed onto the premises by the attraction of the nuisance. 194 Kan. at 84. In that case, the pool was enclosed by a fence and could not be seen until after the act of trespass.

"In this case, the pool was visible, although there was a dispute whether people outside the fence could tell if water was in the pool. Aaron did not climb the fence because he was attracted to the pool. He climbed the fence to retrieve his cap. The attractive nuisance doctrine is not applicable to the facts of this case as developed at trial." (Emphasis added.) 255 Kan. at 283-84.

Although recent decisions by this court may have relaxed the rule that the injured child must be an actual, if technical, trespasser, we take notice that under our recent decision in *Jones v. Hansen,* 254 Kan. 499, the attractive nuisance doctrine or theory of recovery is now limited exclusively to trespassing children. This element, as well as the others set forth in *Gerchberg,* including that the child must be attracted or enticed onto the property by the alleged nuisance, remain as prescribed requirements under the attractive nuisance theory.

In *Kerns,* this court noted that it has "refused to categorically exclude swimming pools from application of the attractive nuisance doctrine." 255 Kan. at 283. However, this court has never extended the doctrine to swimming pools, whether public or private. Similarly, most courts which have examined this issue have refused to extend the attractive nuisance doctrine to swimming pools. See *e.g., Earnest v. Regent Pool, Inc.,* 288 Ala. 63, 257 So. 2d 313 (1972); *Mims v. Brown,* 49 Ala. App. 643, 275 So. 2d 159 (1973); *Carlson v. Tucson Racquet and Swim Club, Inc.,* 127 Ariz. 247, 619 P.2d 756 (Ct. App. 1980); *Wilford v. Little,* 144 Cal. App. 2d 477, 301 P.2d 282 (1956); *Lake v. Ferrer,* 139 Cal. App. 2d 114, 293 P.2d 104 (1956); *Staley v. Security Ass'n,* 152 Colo. 19, 380 P.2d 53 (1963); *Banks v. Mason,* 132 So. 2d 219 (Fla. Dist. App. 1961); *Thompson v. Ewin,* 457 So. 2d 303 (La. App. 1984); *Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 428 A.2d 459 (1981); *Phachansiri v. Lowell,* 35 Mass. App. 576, 623 N.E.2d 1124 (1993); *McCullough v. Tilden,* 44 Misc.2d 256, 253 N.Y.S.2d 422 (1964); *Elliott v. Nagy,* 22 Ohio St. 3d 58, 488 N.E.2d 853

(1986); *Vaughn v. City of Alcoa*, 194 Tenn. 449, 251 S.W.2d 304 (1952).

In the present case the certified question, unfortunately, would appear to call for an unqualified answer of "yes" or "no." In the recent case of *McCubbin v. Walker*, 256 Kan. 276, 886 P.2d 790 (1994), we were faced with a similar dilemma when the issue required a determination of whether tree trimming was an inherently dangerous activity imposing additional duties and liability on the premises owner. We stated: "While we do not rule out the remote possibility that there might be a highly unusual and aggravated set of facts that would support consideration of the inherently dangerous activity doctrine, we hold that, generally, tree trimming is not an inherently dangerous activity." 256 Kan. at 297.

The same reasoning applies in this case. All of our cases to date, beginning with *Gilliland v. City of Topeka* in 1928, have consistently held that a swimming pool does not constitute an attractive nuisance and that the doctrine does not apply. We adhere to our prior cases. A swimming pool, public or private, does not belong in the same class with instrumentalities and places regarded as attractive nuisances.

While we do not rule out the remote possibility that there could be a highly unusual and aggravated factual situation that might support consideration of the attractive nuisance doctrine, we hold that, generally, swimming pools, whether public or private, do not constitute an attractive nuisance and are not subject to the attractive nuisance doctrine.

On the facts submitted to us in this case, the answer to the certified question is clearly "no."