ALBERT M. DOWELL, *Appellee,* v. THE CHICAGO, ROCK
ISLAND & PACIFIC RAILWAY COMPANY and ED JOHN-
SON, *Appellants.*

No. 16,745.

SYLLABUS BY THE COURT.

1. ACTIONS AND REMEDIES—*Joint Wrongdoers—Employee's Lia-
bility to a Third Party for a Misfeasance.* An averment that
an engineer of a railway company negligently and recklessly
ran the engine of which he was in charge against an employee
at work upon the track, without signal or warning of any kind,
and thus seriously injured him, alleges a misfeasance—a vio-
lation of the duty of the engineer to the track worker, and for
the wrongful act he and the railway company may be sued
jointly by the injured employee.

2. REMOVAL OF CAUSES—*Joinder of Resident and Nonresident
Defendants—Separable Controversy.* Where the injured em-
ployee may proceed jointly or severally against the nonresi-
dent railway company and the resident engineer liable for the
injury, and where he elects in good faith to proceed against
them jointly, the action does not become a separable con-
troversy for the purpose of removal because the liability of
one of the defendants arises under the statute and the other
under the common law, nor because different lines of proof
may be necessary to establish the negligence of each, nor yet
because the plaintiff may have misconceived his right of ac-
tion or may be unable ultimately to sustain it.

3. ——— *Joinder to Defeat Removal — Fraudulent Joinder.*
Since the plaintiff had the legal right to sue the tort-feasors
jointly for the wrong done, the allegation that the resident and
nonresident tort-feasors were sued together for the purpose of
preventing a removal of the case to the federal court does not
of itself state a fraudulent joinder.

4. FRAUD—*Pleading.* A general averment of fraud, without
stating the facts upon which the charge is based, is insufficient
to raise an issue for the determination of the court.

5. REMOVAL OF CAUSES—*Fraudulent Joinder—Nominal Party.*
A showing that the resident defendant is a man of little
means and has no property that could be seized to satisfy a
judgment rendered against him does not establish that he is a
sham party, nor that the joinder was fraudulent.

6. RAILROADS—*Care Required of Employee at Work on the Track.*
An employee at work on a railroad track, being in a place of

great danger, must take reasonable precautions for his safety in such a situation; but the degree of care exacted of travelers or persons about to cross a track is not required of one whose duty requires his presence on the track.

7. ——— *Statutory Notice of Injury to Employee—Service.* The notice required to be given to a railroad company in order to fix its liability for an injury to an employee resulting from the negligence of coemployees or agents of the railroad company, as provided for in chapter 341 of the Laws of 1905, may be served by leaving it or a copy thereof with the person in charge of any depot or station of the company. This will be effectual, without regard to whether or not the railroad company has previously designated a person in the county upon whom service may be made.

8. COMPROMISE AND SETTLEMENT—*Mental Capacity to Contract —Findings and Evidence.* The evidence examined and found to be. sufficient to sustain the findings and verdict of the jury.

Appeal from Seward district court. Opinion filed December 10, 1910. Affirmed.

*M. A. Low,* and *Paul E. Walker,* for the Chicago, Rock Island & Pacific Railway Company; *V. H. Grinstead,* for Ed Johnson.

*Houston & Brooks,* and *F. S. Macy,* for the appellee; *Ed Hyde,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: Albert M. Dowell brought this action against the Chicago, Rock Island & Pacific Railway Company and Ed Johnson to recover damages for personal injuries alleged to have been sustained by him through the negligence of the railway company and of Johnson, an engineer of the company. Dowell was a yardman at the station of Liberal, and on January 21, 1907, was engaged in removing cinders and other debris from a track of the company; and, while doing so, Johnson, it was alleged, negligently backed an engine against him, injuring him so that it became necessary to amputate his right leg above the knee and his

left leg below the knee. It was alleged that the engine was backed upon him without warning or signal of any kind. There was an averment that Johnson was incompetent and unfit to act as engineer and was known to be so by the railway company, and it was also stated that the engine was old and defective and lacked the appliances necessary to control the starting and stopping of the engine, and that this, too, was well known to the railway company. It was further alleged that the injury resulted from the incompetency of Johnson, and from his act in carelessly, needlessly and recklessly running upon and injuring Dowell; and that Johnson's acts and that of the railway company concurred in inflicting the injury for which the action was brought.

Shortly after the filing of the petition, and before answer was due, the railway company filed its petition for a removal to the federal court, which, after stating the nature of the controversy and that the amount claimed was $40,000, recited that Dowell is a citizen of Kansas and that the railway company is a corporation duly organized under the laws of Illinois and Iowa, and is a citizen of those states and not of Kansas. It was further alleged that the cause of action set up by Dowell against the railway company was a separable controversy, capable of being finally determined between those parties without the presence of Johnson, and it was also charged that "Johnson was joined as defendant in this action by the plaintiff for the sole and fraudulent purpose of defeating and preventing this defendant, your petitioner, from removing this action from the state court in which it is now pending to the United States circuit court, . . . and for the sole and fraudulent purpose of defeating said jurisdiction of the said United States circuit court in this action." Further along in the petition it was alleged that plaintiff did not have a cause of action against Johnson or any reasonable grounds upon which to base a recovery from him, and that there was no joint cause of action

against both defendants. It was also alleged that Johnson is a man of small means, with little if any property from which a judgment against him could be satisfied, while the railway company is solvent, with a large amount of property within the jurisdiction of the court to meet any recovery that might be obtained against it. An adequate removal bond was offered, which the court approved, but the petition for removal was denied.

Afterward the railway company answered in the case, denying generally and alleging that the injury resulted from the want of ordinary care by Dowell. It was averred that in consideration of the payment of $922.45 he released the railway company from all liability because of the injury, and like averments were made by Johnson in his separate answer. In the reply the circumstances accompanying the signing of the release and a certain receipt were set forth, and it was alleged that the releases were without validity because they were signed when Dowell was mentally and physically incapable of making a contract. The jury made special findings and returned a general verdict against both defendants, awarding Dowell damages in the sum of $15,000. The defendants appeal, and the first error assigned is upon the denial of the petition for removal.

The contention is that no cause of action was stated against Johnson and no joint cause of action alleged against both appellants, but that, as the petition did state a distinct and separable controversy between Dowell and the railway company, citizens of different states, the petition for removal should have been granted. It is argued that Johnson, being the agent and servant of the railway company, is not liable for mere acts of nonfeasance, and this appears to be based on the theory that agents are responsible only to their principals, and while they may be held for misfeasance, they are not liable to third parties for mere omission of duty. This contention overlooks the theory that a servant owes duties to third persons as well as to

his master. A servant or employee of a corporation can not well escape liability for the nonperformance of a duty which he owes to an injured third party. The distinctions between liabilities of agents and servants for acts of nonfeasance and misfeasance, as well as their liability for the omission of their duties to persons other than their principals and masters, are fully discussed and the authorities cited in case notes appended to *Mayer v. Thompson-Hutchison Building Co.*, 28 L. R. A. 433, *Ward v. Pullman Co.*, 25 L. R. A., n. s., 343, and *Hagerty v. Montana Ore Pur. Co. et al.*, 25 L. R. A., n. s., 356.

If it were granted that Johnson was not liable for mere nonfeasance, he would nevertheless be liable for the negligence charged against him in appellee's petition. The allegation is that he carelessly and recklessly ran down and injured appellee with an engine of which he was in charge. This amounts to a charge of violating his duty to appellee and of doing something to the latter's injury. Johnson's act was something more than a breach of contract with his master or an omission of duty to the railway company. It was a positive wrong to appellee—a misfeasance, and he can not be relieved from liability for it because of his contract relation with his master. (Mechem, Agency, § 572; 1 A. & E. Encycl. of L. 1132; 31 Cyc. 1359.)

The appellee's petition sets up the negligence of the company and direct negligent acts of Johnson which concurred with that of the railway company in producing an injury for which a joint action may be brought. The removability of the case is to be determined from the pleadings and the record as they existed when the application to remove was made, independent of what is alleged in the petition for removal, unless it is made to appear that the defendants were fraudulently joined in order to prevent a removal to the federal court. (*Louisville, &c., Railroad Co. v. Wangelin*, 132 U. S. 599.) There is some conflict in the authorities relating

to the right of removal, but under the later decisions of the controlling authority on these questions it must be held that the denial of the petition for removal was not error. A person against whom a joint tort has been committed, as is alleged here, has the right to sue those who inflicted the injury jointly; and "a defendant has no right to say that an action shall be several which a plaintiff elects to make joint." (*Louisville, &c., Railroad Co. v. Ide,* 114 U. S. 52, 56.) In *Powers v. Chesapeake & Ohio Railway,* 169 U. S. 92, it was said that "a separate defense may defeat a joint recovery, but it can not deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings." (p. 97.) In *Alabama Southern Ry. v. Thompson,* 200 U. S. 206, it was said that "it has been too frequently decided to be now questioned that the plaintiff may elect his own method of attack, and the case which he makes in his declaration, bill or complaint, that being the only pleading in the case, is to determine the separable character of the controversy for the purpose of deciding the right of removal." (p. 216.)

A case brought against a master and a servant for the joint negligence of both does not become a separable controversy because the plaintiff has misconceived his cause of action or because he may be unable to establish it, and his motive in joining them is not material if he is acting within his right. (*Powers v. Chesapeake & Ohio Railway,* 169 U. S. 92; *Alabama Southern Ry. v, Thompson,* 200 U. S. 206; *Cincinnati & Texas Pacific Ry. v. Bohon,* 200 U. S. 221; *Chesapeake & Ohio R'y Co. v. Dixon,* 179 U. S. 131; *Jacobson v. Chicago, R. I. & P. Ry. Co.,* 176 Fed. 1004; *Welch v. Cincinnati, N. O. & T. P. Ry. Co.,* 177 Fed. 760.) The fact that the liability of one of the joint tort-feasors was statutory and that of the other arose under the common law does not

preclude the joinder of both as defendants or make the controversy separable, nor does the fact that different lines of proof may be necessary to establish the negligence of each have that effect. It is enough if the concurrent acts of negligence of each contributed to the injury inflicted upon the appellant. (*Southern Ry. Co. v. Miller*, 217 U. S. 209; *Charman v. Lake Erie & W. R. Co.*, 105 Fed. 449; *Painter v. Chicago, B. & Q. R. Co.*, 177 Fed. 517.)

In its petition for removal the railway company attacks the good faith of the joinder. Under some of the cases its averments, although general, would raise the issue of fraudulent joinder; and if it were properly raised the trial of the issue would be in the federal court. (*Bank v. Fritzlen*, 75 Kan. 479.) In the recent case of the *Illinois Central R. R. Co. v. Sheegog*, 215 U. S. 308, where several tort-feasors were joined as defendants, a nonresident defendant asking for removal alleged that the joinder of the defendants was made only for the purpose of preventing removal and was fraudulent and knowingly false. The supreme court of the United States, in an opinion against which there was a vigorous dissent, held the general averments to be insufficient to warrant removal. After stating that a removal could not be prevented where a showing of a fraudulent joinder was made, the court proceeded:

"On the other hand, the mere epithet 'fraudulent' in a petition does not end the matter. In the case of a tort which gives rise to a joint and several liability the plaintiff has an absolute right to elect, and to sue the tort-feasors jointly if he sees fit, no matter what his motive, and therefore an allegation that the joinder of one of the defendants was fraudulent, without other ground for the charge than that its only purpose was to prevent removal, would be bad on its face. (*Alabama Great Southern Ry. v. Thompson*, 200 U. S. 206; *Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Bohon*, 200 U. S. 221.) If the legal effect of the declaration in this case is that the Illinois Central Railroad Company was guilty of certain acts and omissions by reason of

which a joint liability was imposed upon it and its lessor, the joinder could not be fraudulent in a legal sense on any ground except that the charge against the alleged immediate wrongdoer, the Illinois Central railroad itself, was fraudulent and false." (p. 316.)

In *Hukill v. Maysville & B. S. R. Co.*, 72 Fed. 745, it was held that if a person had a good cause of action for a joint tort against several defendants it could not be a fraud to join them, although the plaintiff would not have brought in the resident defendant except to avoid the jurisdiction of the federal court, and it was added:

"Where he has reasonable ground for a *bona fide* belief in the facts upon which the liability of all the defendants depends, his motive in joining them can not be questioned. It is only where he has not, in fact, a cause of action against the defendants, and has no reasonable ground for supposing that he has, and yet joins them, in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real defendant to a removal." (p. 750.)

Under these rulings the facts stated in the petition did not warrant a removal for fraudulent joinder. A general allegation of fraudulent purpose, without averments of supporting facts, is insufficient. The joinder here could not well be fraudulent unless the charge that Johnson himself was negligent was fraudulent and false. If it were made to appear that Johnson was not in charge of the engine when it was run against appellee or that he had no connection whatever with the tort, and that the appellee had joined him as defendant knowing that he had no ground for an action against him, but had included him for the purpose of defeating jurisdiction, there would be ground for appellants' contention. Here, however, the appellee stated a cause of action, and had reasonable grounds for believing that he had a cause of action against both defendants; and whether both were negligent was one of the issues to be tried on the merits of the case. No attempt was made to show that appellee's statements of facts as to the

participation of defendants in the wrongful injury were false and without foundation, and it has been often decided that a general averment of fraud, without stating the facts upon which the charge is based, presents no issue for determination. (*The State, ex rel., v. Williams,* 39 Kan. 517; *K. P. & W. Rld. Co. v. Quinn,* 45 Kan. 477; *Ladd v. Nystol,* 63 Kan. 23; *Warax v. Cincinnati, N. O. & T. P. Ry. Co.,* 72 Fed. 637; *Offner v. Chicago & E. R. Co.,* 148 Fed. 201; *Jacobson v. Chicago, R. I. & P. Ry. Co.,* 176 Fed. 1004.)

It was alleged, it is true, that Johnson is a man of small means and has little property subject to application upon a judgment obtained against him, but it has been decided that "a defendant who is legally liable together with another, and whose presence defeats the right of removal, is neither a nominal nor sham party merely because he is pecuniarily irresponsible, so that a judgment against him would be of no value." (*Deere, Wells & Co. v. Chicago, M. & St. P. Ry. Co.,* 85 Fed. 876, syllabus; see, also, *Welch v. Cincinnati, N. O. & T. P. Ry. Co.,* 177 Fed. 760.)

The questions presented on the merits relate mostly to the sufficiency of the evidence to sustain the findings and judgment. It is contended that the demurrers to the evidence of appellee should have been sustained and a verdict for appellants directed. It is argued that the release signed by appellee operated to discharge the railway company from any liability because of the injury to him. While he was in the hospital, and on March 7, 1907, appellee signed a paper, at the instance of an agent of the railway company, which purported to release the company from any liability for any loss or damage because of his injury, for a consideration of $800. After leaving the hospital, and on April 26, 1907, he executed a receipt for $122.45, which recited that it was a completion of the former agreement of settlement, and it also purported to be a full release and discharge of the railway company for appellee's injury.

This amount is said to have been given to pay for a wheel chair and for transportation to bring appellee's parents to him. Evidence was offered to prove that appellee was mentally incapable of making contracts or of executing releases when the papers were signed. The jury made special findings that appellee was "mentally incompetent to understand the nature and character of his act when he signed the alleged release in question in this action," and that he was "weak-minded and incapable mentally of understanding or transacting ordinary business transactions at the time he signed the alleged release in question." The sufficiency of the testimony to sustain these findings is challenged. Some of that offered was of little weight or force, because of the lack of opportunity that witnesses had for learning and judging of appellee's mental condition, and also because of the lapse of time between the execution of the release and the examination of appellee by those witnesses. However, considerable testimony was offered which did tend to show incapacity and which is deemed to be sufficient to uphold the findings.

There were findings to the effect that appellee's signatures to the release and receipt were obtained by fraudulent representations, and it is claimed that these findings, too, are unwarranted, but if appellee did not understand the nature of his acts and was mentally incapable of executing releases this feature of the case is not important.

It is further argued that if appellee was an imbecile and incapable of making a settlement or contract he necessarily lacked capacity to bring and maintain the action. The findings of the jury relate to the time the release was executed, and his capacity to maintain an action when it was begun or afterward was not involved. While there was testimony tending to show that he was weak-minded when the trial was had, the condition at that time was not an issue, and the findings of the jury did not relate to that time.

Although contended for, it can not be held as a matter of law that appellee's contributory negligence precludes a recovery. He was injured while working on a track in the daytime. When the engineer ran the engine down the track appellee stepped aside to let it pass. After going a short distance the engine stopped near a water tank, and appellee understood those on the engine to say that they were going to take water. He stepped back on the track and resumed his work a few feet to the rear of the engine. The engine only stopped a minute or so, when it was suddenly started backward, one witness saying that the engineer appeared to throw it wide open, and he did run it against appellee without ringing the bell or the giving of any signal. The appellee, of course, knew the engine was likely to be moved again soon, but if his testimony was true he had some reason to think that it would not be moved until water was taken, and he had some reason to expect that it would not be moved without ringing the bell, as that was the rule and practice of the yard. Those on the engine either saw or should have seen appellee working on the track as they approached him on the way to the stopping place, and, knowing he was at work there, ordinary prudence would seem to require a ringing of the bell or the giving of some signal before starting the engine backward. While an employee working on the track is in a place of great danger and is required to take reasonable precautions for his safety, the degree of care exacted of travelers or persons about to cross a track is not required of one whose duty requires his presence on the track. (*Comstock v. U. P. Rly. Co.,* 56 Kan. 228; *Railway Co. v. Bentley,* 78 Kan. 221.) If he fail to take the precautions which the perils of the situation and reasonable prudence require his negligence would defeat a recovery. As appellee had reason to think that some time would be consumed in taking water, and that those in control of the engine knew of his presence on the track and would give a

warning before moving the engine backward, the question whether he was guilty of contributory negligence was for the jury, and could not be determined by the court as a matter of law.

There is a contention that the railway company was not given the notice required by statute. (Laws 1905, ch. 341; see Gen. Stat. 1909, §§ 6999, 7000.) A notice was served on the agent of the railway company in charge of the station at Liberal in due time. The claim is that the appellee was required to serve notice on the person designated by the company, in pursuance of the provisions of section 68a of the civil code (Gen. Stat. 1901, § 4499; see Code 1909, § 71), and that notice could not be made upon other representatives of the company unless the company had failed to designate or appoint a person in the county upon whom process should be served. Nothing in the record is found to show whether the railway company had made a designation or not. Section 2 of chapter 341 of the Laws of 1905 provides that notice may be served on the person designated by the company, and that if no one is designated then it may be served on a local superintendent, a freight agent, an agent to sell tickets or a station keeper. This alone might indicate that service on the superintendent or other agents would be unavailing unless it was made to appear that no one had been designated by the railway company in the county to accept such service, and that one relying on such a notice must show that the designation had not been made. In the latter part of the section, however, is a further provision that an effectual service may be made "by leaving a copy thereof at any depot or station of such company or corporation in such county, with the person in charge thereof or in the employ of such company or corporation." (Laws 1905, ch. 341, § 2.) It appears that compliance was made with this alternative provision, as it was shown that a written notice was given to or left with the agent in charge of the station or depot at Liberal, and this was sufficient.

There were objections to testimony some of which may have been inadmissible, but in view of the special findings which fixed the cause and the time of the injury the objections are deemed to be immaterial and do not furnish any grounds of reversal.

Finding no prejudicial error, the judgment of the district court is affirmed.