No. 68,405

AARON KERNS, A Disabled Minor, By and Through Samuel Kerns, His Natural Parent, Natural Guardian, and Next Friend, *Appellant/Cross-Appellee*, v. G.A.C., INC., *et al.*, *Appellees/ Cross-Appellants*, and AMERICAN FENCE COMPANY, *Appellee*.

(875 P.2d 949)

Opinion filed May 27, 1994.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, of Wichita, argued the cause, and *Ken M. Peterson* and *Diane S. Worth*, of the same firm, were with him on the briefs for appellant/cross-appellee.

*Nicholas S. Daily*, of Depew, Gillen & Rathbun, of Wichita, argued the cause for appellee American Fence Company.

*James L. Cline*, of Turner and Boisseau, Chartered, of Wichita, argued the cause, and *Eldon L. Boisseau, Christopher P. Christian*, and *Anne M. Hull*, of the same firm, were on the briefs for appellees/cross-appellants G.A.C., Inc., and Harold and Ena Orindgreff.

*Wayne T. Stratton* and *John D. Ensley*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, appeared on the brief for *amici curiae* Kansas Hospital Association and Kansas Medical Society.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff Aaron Kerns, a six-year-old child, fell into a closed swimming pool at Green Acres Mobile Home Park (the park) and nearly drowned, sustaining serious injuries. Through his father, he sued, alleging negligence by the operators of the park, the corporation that owned the park, and the fabricator and installer of the fence that surrounded the pool. The operators and the fence company were granted summary judgment prior to trial. The jury found the corporate defendant 2% negligent, the father 68% negligent, and the child 30% negligent. Plaintiff appeals, claiming that the trial court erred in (1) granting summary judgment for the operators of the park and the fence company, (2) admitting evidence of collateral source benefits into evidence, and (3) not granting a new trial based on the jury's award of only $100 for noneconomic damages. The corporation cross-appeals the trial court's failure to grant its motions for summary judgment and directed verdict. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

Aaron, who was in first grade, lived with his father, Samuel Kerns, at the park for several years prior to the incident. G.A.C., Inc., is the corporation that owns and operates the park. Harold and Ena Orindgreff are two of the three shareholders for G.A.C. and officers of the corporation; they supervised the management of the park on a daily basis. The only other corporate shareholder is the Orindgreffs' son. Irene Michaelis was the on-site manager

for the park. A resident of the park, Alva Oller, was hired by G.A.C. to maintain the pool.

The offices of G.A.C. were at the entrance of the park and provided a clear view of the swimming pool. The pool had a five-foot tall chain link fence with mesh measuring between two and three inches wide that had been installed by American Fence Company (American). The safety equipment for the pool was stored in a locked shed. The pool was open only during the summer months. The pool was closed at the time of the incident and had been pumped dry at the close of the previous season. When water from precipitation accumulated in the pool in the off season, one of the Orindgreffs would instruct Oller to pump it out. On the day of the incident there was an accumulation of three to four feet of murky water, algae, and leaves in the pool that made the bottom and sides of the pool slippery.

On April 22, 1990, Aaron and a friend, Chris Dreher, were playing in an open grassy area next to the pool. Aaron threw his baseball cap into the air, and it went over the fence and landed in the pool. Aaron climbed the fence and entered the pool to retrieve his cap. Chris, who had also climbed the fence, saw Aaron go under the water. Chris went for help and eventually two adults, Jim Kennedy and Chris' mother, Ruth Dreher, entered the pool area to rescue Aaron. They were initially unable to find Aaron beneath the dark, murky water.

A shepherd's crook was obtained from the storage shed and used to locate Aaron. Kennedy retrieved Aaron from the pool. Kennedy and Samuel Kerns attempted to resuscitate Aaron. Emergency medical service personnel transported Aaron to the hospital. Aaron suffered injuries which resulted in his being severely disabled. Aaron will never be able to walk, talk, or function independently.

Prior to trial, the district judge granted American's and the Orindgreffs' motion for summary judgment. The jury subsequently found (1) G.A.C.'s maintenance of the pool was not wanton or reckless, (2) G.A.C.'s maintenance did violate a city ordinance and that violation contributed to Aaron's injuries, and (3) Aaron was not entitled to recover under an attractive nuisance

theory. The jury awarded Aaron past and future medical expenses totalling $870,243, $670,609 in loss of future income, and $100 for noneconomic damages. The jury determined Aaron could be expected to receive $528,732 in net collateral source benefits from an insurance policy.

Additional facts will be discussed in the analysis of the issues.

## STANDARD OF REVIEW

The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 519-20, 856 P.2d 1313 (1993).

## DID K.S.A. 1993 SUPP. 60-513(b) BAR THE ACTION?

A statute of repose limits the time during which a cause of action can arise and usually runs from an act of the alleged tortfeasor. A statute of repose abolishes the cause of action after the passage of time, even though the cause of action may not have yet accrued. By contrast, a statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. K.S.A. 1993 Supp. 60-513 contains both a statute of limitations, subsection (a), and a statute of repose, subsection (b). *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 669, 831 P.2d 958 (1992).

Prior to trial, American moved for summary judgment, claiming (1) the city ordinance was not violated, (2) if it was violated it

only applied to the owner or operator of a pool and not to American, (3) the pool was not an attractive nuisance, (4) Aaron was a trespasser at the time of the accident, and (5) since more than 10 years had passed since it had installed the fence, plaintiff's action was barred by the statute of repose, K.S.A. 1993 Supp. 60-513(b). The district court ruled K.S.A. 1993 Supp. 60-513(b) barred plaintiff's' claim against American because the suit was filed more than 10 years after the last wrongful act, *i.e.*, the installation of the fence by American. The court also determined that American, which had fabricated and installed the fence in 1968 or 1969, had no continuing duty to warn of a defect in the fence based on information published in 1987. The district court then stated the duty to warn the plaintiff was not retroactive, but if new information came to light, there would be a duty to warn new and future customers. The court also ruled the city ordinances applied to the owner, G.A.C., but not to the installer of the fence, American. The trial court did not rule on American's other claims for summary judgment.

Under the standard for reviewing the grant of summary judgment, we must resolve all facts and inferences in favor of the plaintiff and therefore assume that (1) American manufactured and installed the fence more than 10 years prior to the accident and (2) the useful safe life of the fence had not expired. American notes that K.S.A. 1993 Supp. 60-513(a) sets a two-year limitation for actions for (1) trespass upon real property, (2) taking, detaining, or injuring personal property, (3) fraud, (4) injuries to the right of another, not arising on contract, (5) wrongful death, (6) recovery for an ionizing radiation injury, and (7) the rendering or failure to render professional services by a health care provider, not arising under a contract. K.S.A. 1993 Supp. 60-513(b) states the causes of action listed shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of*

*the act giving rise to the cause of action.* American argues more than 10 years have passed since the fence was manufactured and installed; therefore, plaintiff's action was time barred.

Plaintiff argues that the district judge erroneously applied 60-513, a general statute of limitations and repose, rather than K.S.A. 1993 Supp. 60-3303, the specific statute of limitations and repose.

K.S.A. 1993 Supp. 60-3303(a)(1) states a product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's useful safe life had expired. "Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. The "time of delivery" is when a product is delivered to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold. Examples of evidence that is especially probative in determining whether a product's useful safe life had expired include the effect of deterioration from natural causes or from climate and other conditions under which the product was used or stored.

The trial court granted summary judgment on July 21, 1992. A case which resolves the issue of which statute of repose applies was filed subsequent to the trial court's grant of summary judgment. On January 13, 1993, the Kansas Court of Appeals filed its opinion in *Baumann v. Excel Industries, Inc.*, 17 Kan. App. 2d 807, 845 P.2d 65 (1993), *rev. denied* 252 Kan. 1091 (1993). In *Baumann*, the plaintiff purchased a used lawnmower in 1980 that had been manufactured by Excel in 1966 and was last under the control of the manufacturer no later than 1978. Bauman was injured on July 31, 1988, while attempting to prime the engine while the lawnmower was running. He filed suit against Excel in July 1990. The Court of Appeals considered the threshold question to be whether the general statute of repose, 60-513(b), or the specific statute of repose, 60-3303(b), controlled the resolution of Baumann's case. 17 Kan. App. 2d at 809. It noted that both statutes are true statutes of repose, which bar a cause of action after a set period of time even if it has not yet

accrued, rather than statutes of limitations, which bar an action within a set period of time after the action accrues. 17 Kan. App. 2d at 809-10 (citing *Harding*, 250 Kan. at 668).

The Court of Appeals reviewed our decision in *Harding* and noted that this court had held that the categories of claims covered by 60-3303(b)(2)(D) were exempt from the 10-year statute of repose, 60-513(b). The Court of Appeals considered this court's analysis in *Harding* instructive.

In *Harding*, 250 Kan. 655, plaintiff had contracted malignant pleural mesothelioma in 1988 after prolonged exposure to asbestos-containing products at his workplace. His last exposure to products manufactured by the defendant was prior to January 1, 1977. He died on October 26, 1988, and his wife filed the action on September 5, 1990. The defendant moved for summary judgment under the 10-year statute of repose in 60-513(b). The district court found that by passage of 60-3303(e), the legislature provided a revival statute designed to allow claims such as Harding's to escape the effect of the 10-year statute of repose. On appeal, the defendant challenged the constitutionality of the revival statute.

The *Harding* court stated that the statute of limitations in effect at the time an action is filed applies. The *Harding* court then traced the evolution, through case law and legislative enactments, of the tort statute of limitations and statutes of repose. It found no reason to invalidate 60-3303(e) as unconstitutional. In particular, the court stated the provision of 60-3303(c), which provides that nothing contained in 60-3303(a) and (b) shall modify 60-513, did not nullify the exceptions in 60-3303(b)(2)(D). Those exceptions include situations where the harm is caused by prolonged exposure to a defective product and where the injury-causing aspect of the product was not discoverable by a reasonably prudent person within 10 years of the time of delivery of the product. The court in *Harding* reiterated the general rule of statutory construction that " 'statutes complete in themselves, relating to a specific thing, take precedence over general statutes.' " 250 Kan. at 661 (quoting *Szoboszlay v. Glessner*, 233 Kan. 475, 479, 664 P.2d 1327 [1983]).

After reviewing *Harding,* the Court of Appeals in *Bauman* then observed that 60-513(b) bars actions commenced more than 10 years after the time of the act giving rise to the cause of action. It noted that 60-3303(b), part of the Kansas Products Liability Act, provides that when a defective product causes an injury more than 10 years after delivery, a rebuttable presumption arises that the harm occurred after the useful safe life of the product expired but that the presumption may be rebutted by clear and convincing evidence. K.S.A. 1993 Supp. 60-3303(c) states "nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513, and amendments thereto." The Court of Appeals, applying *Harding,* found that because the legislature had not indicated otherwise, 60-3303(b), a specific statute of repose, controls over K.S.A. 60-513(b), a general statute of repose. 17 Kan. App. 2d at 814.

Plaintiff argues that *Harding* and *Baumann* require reversal of the district court's grant of summary judgment to American and that the cause should be remanded for a new trial to allow a jury to determine whether the useful safe life of the fence had expired. American responds that *Baumann* was wrongly decided. It contends there is no conflict between the two statutes of repose and either statute can be applied to product liability actions, depending on the facts of the specific case. American argues that the Court of Appeals erred by failing to notice that the two statutes run the 10 years from a different event: K.S.A. 1993 Supp. 60-513(b) from the act giving rise to the cause of the action and K.S.A. 1993 Supp. 60-3303(b) from the time of delivery to the first purchaser or lessee.

We disagree with American's contention that the *Baumann* court incorrectly applied *Harding.* K.S.A. 1993 Supp. 60-3303(b) allows a plaintiff to bring an action more than 10 years after delivery of the product if the plaintiff can establish by clear and convincing evidence that the useful safe life of the product has not expired. The trial court erred in granting summary judgment based on 60-513(b). Although the district court applied the wrong statute, it reached the right result.

The hazard plaintiff complains of is that the large size of the mesh used in the fence to keep children out of the pool actually

assisted the child to climb over the fence. If the manufacturer had warned G.A.C. that a smaller mesh was needed to protect children from the hazards of an unattended pool, G.A.C. could have installed a fence that would have prevented the accident. Plaintiff proffers he will offer evidence "that in the late 1980s, numerous reports were issued about the dangers of this type of fencing when used around pools and that American Fence itself helped draft an ordinance for Phoenix, Arizona, requiring the use of a small-mesh fence around swimming pools." Plaintiff admits that the use of the large size mesh was a defect that existed at the time the fence was installed.

K.S.A. 1993 Supp. 60-3303(b)(1) includes a 10-year statute of repose. The 10-year period of repose applies if the injury-causing aspect of the product that existed at the time of delivery was discoverable by a reasonably prudent person. K.S.A. 1993 Supp. 60-3303(b)(2)(D). If the use of the large size mesh to enclose a swimming pool was the defect, that defect existed and was discoverable by a reasonably prudent person at the time the fence was installed. The district judge correctly determined that a 10-year statute of repose barred Kerns' claim against American and that American had no duty to warn because the danger or hazard alleged was open or obvious which should have been realized by a reasonable user of the product. K.S.A. 60-3305.

## SUMMARY JUDGMENT AS TO INDIVIDUAL LIABILITY

Plaintiff sued the Orindgreffs as individuals and G.A.C. as the owner/operator of the park. The Orindgreffs moved for summary judgment, alleging that because G.A.C., a corporation, owned the park, the Orindgreffs, agents of the corporation, had no personal liability. The Orindgreffs had conveyed the property to the corporation, G.A.C., in 1977 but had failed to record the assignment. The trial court noted attractive nuisance claims go against the owner of the property. Because plaintiff's claim was made against the Orindgreffs as individuals and not in their capacity as officers of the corporation, the district court found no legal basis for plaintiff's claim against the Orindgreffs. The trial court ruled that the fact that the ownership of the park was conveyed controlled,

despite the conveyance not being recorded, and granted the motion for summary judgment. Plaintiff argues the Orindgreffs were liable, not because of their status as officers or agents of a corporation, but because "they personally committed the wrongdoing."

A director or officer of a corporation is not liable for torts committed by the corporation unless the officer or director commits or participates in the tort. *McFeeters v. Renollet*, 210 Kan. 158, 161, 500 P.2d 47 (1972). In *McFeeters*, defendant Renollet was president of a corporation engaged in building houses, and the McFeeters bought a home negligently constructed by the corporation. The plaintiffs' petition alleged Renollet had personally supervised the construction and failed to perform a duty he owed to the house buyers. The *McFeeters* court noted that a corporation is liable not only for its own torts but also for the torts of it agents when committed within the scope of the agents' authority and course of employment. It further stated that officers, agents, and employees of a corporation who violate a duty owed to third persons are liable to such persons for their torts.

In *Russell v. American Rock Crusher Co.*, 181 Kan. 891, 317 P.2d 847 (1957), defendant Tobin supervised and directed the quarrying operations of the defendant corporation. The plaintiff sued Tobin in his capacity as owner and manager. The trial court denied Tobin's demurrer. The *Russell* court noted the general rule that an agent of a corporation who violates a duty owed to a third person, while acting as an agent, is individually liable, unless the act is one of nonfeasance. 181 Kan. at 895 (citing *Duensing v. Leaman*, 152 Kan. 42, 44, 102 P.2d 992 [1940]). The *Russell* court noted that *Duensing* indicated the exception for acts of nonfeasance had not yet been necessarily recognized in Kansas in negligence actions against corporations and their agents. " 'There are exceptions to the rule where the act is one of nonfeasance, but that exception, *even if recognized in Kansas*, would not avail here, for the act complained of is one of misfeasance.' " (Emphasis added.) 181 Kan. 895 (quoting *Duensing*, 152 Kan. at 44).

The Orindgreffs respond that *McFeeters* and *Russell* are distinguishable because they involve acts of misfeasance instead of

acts of nonfeasance. They argue the act of failing to drain the pool is nonfeasance, not misfeasance. See *Maddock v. Riggs*, 106 Kan. 808, 812-13, 190 Pac. 12 (1920) (gratuitous bailment case which noted the difference between acts of nonfeasance and misfeasance). Misfeasance does not include acts of omission or the complete failure to do some act. If, however, the person begins to act, and then fails to do something which he should have done, misfeasance has occurred.

An extended discussion of the meaning of misfeasance can be found in *Wells v. Hansen*, 97 Kan. 305, 309-10, 154 Pac. 1033 (1916). The *Wells* court went on to quote from cases from other states that do not recognize the distinction in this context, *e.g. Lough v. John Davis & Co.*, 30 Wash. 204, 70 Pac. 491 (1902): " 'An agent is liable to third persons when he is negligent in the performance of his duties, *whether* such act is termed misfeasance or nonfeasance.' " 97 Kan. at 309. (Emphasis added.) In *Dowell v. Railway Co.*, 83 Kan. 562, 112 Pac. 136 (1910), *aff'd* 229 U.S. 102, 57 L. Ed. 1090, 33 S. Ct. 684 (1913), this court addressed an appellate contention that an agent could not be liable to a third person for acts of nonfeasance, and noted this claim "overlook[ed] the theory that a servant owes duties to third persons as well as to [the] master." 83 Kan. at 565-66.

Misfeasance is the improper doing of an act. It is the failure to do something with the degree of care and skill reasonably demanded. Nonfeasance is the total omission of any act. Misfeasance can, however, include to some extent not doing something, *i.e.*, not exercising the required degree of care. Sufficient participation in a tortious act can exist when there is an act or omission by the officer or agent of a corporation which logically leads to the inference that the officer or agent had a share in the wrongful acts of the corporation which constitute the offense.

Applying the standard of review for summary judgment, we note that the operators had either assumed the duty or assigned their duty to Oller, an agent of the corporation, to pump the accumulated water from the pool. They had a responsibility to act and they failed to act. There was sufficient evidence that the Orindgreffs owed a duty to Aaron. The district court erred in granting the Orindgreffs' motion for summary judgment.

## EVIDENCE OF COLLATERAL SOURCE BENEFITS

Plaintiff challenged the constitutionality of K.S.A. 1993 Supp. 60-3801 *et seq.*, the Collateral Source Benefits Act, prior to trial. Plaintiff noted in his trial brief that a similar challenge to the Act had been made in *Thompson v. KFB Ins. Co.*, a case then pending in the Kansas Supreme Court. The district judge found the Act to be constitutional and allowed evidence of collateral source benefits to be adduced at trial. The jury found Aaron had received $528,732 in collateral source benefits from an insurance policy.

The parties recognize that the subsequent decision in *Thompson,* 252 Kan. 1010, 850 P.2d 773 (1993), that K.S.A. 1993 Supp. 60-3801 *et seq.* was unconstitutional, resolves that issue in this case. G.A.C. states that if its cross-appeal is denied, the action should be remanded to the district court with instructions to recalculate the damage award by adding the collateral source benefits previously removed. G.A.C. asserts there is no need for a retrial on either damages or liability if the only error is on this ground. Plaintiff argues the erroneous admission of evidence of the collateral source benefits requires a new trial as to damages and liability. Plaintiff argues the only relevant Kansas case, *Wisker v. Hart,* 244 Kan. 36, 766 P.2d 168 (1988), can be distinguished on the facts.

The *Wisker* court recognized that a prior legislative attempt to allow collateral source benefits into evidence had been invalidated after the trial but during the pendency of the *Wisker* appeal. The *Wisker* court concluded the jury was instructed that damages were to be determined only if decedent was less than 50 percent at fault. In *Wisker,* we had absolutely no basis from which to conclude the jurors disregarded their oaths or the instructions given. The erroneous admission of the collateral source benefits evidence could have reduced the damages had the jury reached the point of determining damages. The jury had not reached that point, and hence, the admissibility of collateral source benefits evidence on damages was immaterial. 244 Kan. at 46-47. Here, the jury had concluded that Aaron was less than 50% negligent. It reached the point where the erroneous admission of the collateral source benefits evidence could have affected the award of

damages. The error of admitting the collateral source benefits evidence became material. The district court erred in admitting the collateral source benefits evidence.

## NONECONOMIC DAMAGES

The calculation of damages to restore a person to his or her prior position is divided into economic and noneconomic damages. Economic damages include the cost of medical care, past and future, and related benefits, *i.e.*, lost wages, loss of earning capacity, and other such losses. Noneconomic losses include claims for pain and suffering, mental anguish, injury and disfigurement not affecting earning capacity, and losses which cannot be easily expressed in dollars and cents. *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, Syl. ¶ 6, 789 P.2d 541 (1990).

The jury awarded $100 for disabilities and disfigurement, accompanying mental anguish, and conscious pain and suffering incurred by Aaron Kerns to date and in the future. The district court denied the plaintiff's motion for new trial, finding that under the facts the jury's award of $100 for noneconomic damages was not manifestly unjust. The district court concluded that the jury could have reasonably determined under the facts, "in an unprejudiced, unimpassioned way that the conscious awareness of pain, suffering, [and] disfigurement is either not there or minimally [there]."

Plaintiff contends the trial court disregarded uncontroverted evidence that Aaron had a conscious awareness of his disability or disfigurement. Plaintiff points out that it was uncontroverted that Aaron is consciously aware of his surroundings and can feel pain and suffering. Plaintiff concludes that the jury's award indicated it acted under passion and prejudice and that the verdict was so erroneous that a new trial is required on all issues, not just on the issue of noneconomic damages.

The standard of evaluation by which an award for pain and suffering is measured is such amount as reasonable persons estimate to be fair compensation when that amount appears to be in harmony with the evidence and arrived at without passion or prejudice. *Fudge v. City of Kansas City*, 239 Kan. 369, Syl. ¶ 6,

720 P.2d 1093 (1986). In reviewing an award for pain and suffering, a noneconomic element of damages, this court must review the record to determine if there is evidence to support the jury's determination of damages. This court's standard of review of a jury's award of noneconomic damages is well established. Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of the jurors, who may be expected to act reasonably, intelligently, and in harmony with the evidence. Such awards are overturned only if the collective conscience of the appellate court is shocked. *Kuhl v. Atchison, Topeka & Santa Fe Rwy. Co.*, 250 Kan. 332, 342, 827 P.2d 1 (1992). Although questions relating to inadequate verdicts have on several occasions been presented to and ruled on by this court, we are aware of no case from this jurisdiction which solves the problem of determining whether a verdict is adequate or inadequate.

The district judge, in an attempt to determine the jury's reason for awarding $100 for the disabilities and disfigurement suffered by Aaron, concluded that evidence of conscious awareness of pain, suffering, and disfigurement supported the jury's conclusion there was only minimal suffering. The principal contention advanced by plaintiff is that the verdict was so grossly inadequate as to require a new trial.

K.S.A. 60-259 provides a new trial may be granted on all or a part of the issues when one of the statutory grounds for a new trial exists which affects the substantial rights of a party. A new trial may be limited to the issue of damages in those instances where the issue is separable and when the interest of justice will be served thereby. See *Schmidt v. Cooper,* 194 Kan. 403, 406, 399 P.2d 888 (1965). Inherent in general recognition of the power to limit a new trial to the single issue of damages when the verdict

award is inadequate is the requirement that the issue of damages be separable from the issue of liability. Because of the numerous issues of liability that must be determined on retrial, the question of the adequacy of the verdict for pain, suffering, and disfigurement cannot be answered. As to the remaining parties we must grant a new trial on all issues.

## CROSS-APPEAL

Plaintiff's petition alleged G.A.C. failed to provide a shepherd's crook, ring buoy, or first aid kit (Wichita City Code §§ 5.79.090 and 5.79.100), failed to maintain the water in an acceptable condition (§ 5.79.130), allowed water to accumulate (§ 7.40.040), and failed to prohibit access to the pool by a method that provides reasonable control (§ 5.79.110).

In its motion for summary judgment, G.A.C. claimed that the city ordinances did not apply to a closed pool, that any violation of the ordinances was not negligence per se, and that there was no proximate cause linking a violation of the ordinances and Aaron's injury. The trial court denied the motion for summary judgment. It stated, "[T]he Court finds that the violation of the municipal ordinances aimed by their terms at requiring safety equipment and pool and water clarity conditions are acts of negligence, as with violating any other codified law."

When the plaintiff rested its case, G.A.C. moved for a directed verdict, claiming that as a matter of law the swimming pool was not an attractive nuisance, the ordinances did not apply during the off-season, any ordinance violations were not the proximate cause of Aaron's injuries, and because Aaron was a trespasser the evidence did not show G.A.C. had breached its duty to refrain from willful, wanton, or reckless conduct. The court denied the motion for directed verdict, finding the issue of whether the pool was an attractive nuisance was a factual question for the jury; that the city ordinances did continue to apply during the off-season; and that although Aaron was a trespasser, the attractive nuisance theory, if accepted by the jury, excused the trespass and, if not, then there was sufficient evidence for the jury to resolve the issue of willful or wanton conduct.

The jury was instructed it could find negligence per se if it found G.A.C. violated either Wichita City Code §§ 5.79.130, 5.79.110, 7.40.040, or 5.79.090 and that violation caused or contributed to Aaron's injuries. The jury found G.A.C. had violated § 5.79.130, the clarity of water ordinance, and that this had caused or contributed to Aaron's injuries.

The ordinances given to the jury state:

"**5.79.090 Lifesaving equipment.** One unit of lifesaving equipment shall consist of the following: A ring buoy . . . ; [a] life pole or shepherd's crook type of pole . . . ."

"**5.79.100 First aid.** Every Type A swimming pool shall be equipped with a first aid kit which shall be kept filled and ready for use."

"**5.79.130 Cleaning.** The swimming pool water shall have sufficient clarity at all times so that a black disk, six inches in diameter, is readily visible when placed on a white field at the deepest point of the swimming pool when observed from the side of the pool at a point adjacent thereto. Visible dirt on the bottom of the swimming pool shall be removed every twenty-four hours or more frequently as required. Visible scum or floating matter on the swimming pool surface shall be removed every twenty-four hours by flushing or other effective means."

"**7.40.040 Nuisances.** It is unlawful for any person to maintain or to permit to exist any nuisance as herein described. The following conditions or materials are declared to be injurious to the health and well being of citizens of the city of Wichita and are declared to be nuisances together with those conditions not herein enumerated but coming under the definition of nuisance as described in Section 7.40.010:

. . . .

"(4) Open . . . swimming pools . . . that create hazards to any persons, [or] collect water . . . except those . . . maintained with adequate . . . fencing consisting of material recognized for the purpose and having openings not larger than two inches in the least dimension."

"**5.79.110 Control of access to closed pool.** When any Type A swimming pool is not open for use, access to the pool shall be prohibited by a method that provides reasonable control."

The standard of review for summary judgment has been previously stated. The standard of review for ruling on motions for directed verdicts is that this court must "resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could" differ on the conclusions to be drawn from the

evidence adduced, the motions should be denied. *Kuhl*, 250 Kan. at 342. Although the two motions are different, the resolution of each issue hinges on the same questions of law.

"Negligence per se usually consists of violation of a specific requirement of law or ordinance. The distinction between 'negligence' and 'negligence per se' is the means and method of ascertainment, in that the former must be found by a factfinder from the evidence, while the latter results from violation of the specific requirement of law or ordinance; and the only fact for the determination of the factfinder is the commission or omission of the specific act inhibited or required." *Watkins v. Hartsock*, 245 Kan. 756, 761, 783 P.2d 1293 (1989).

G.A.C.'s first contention is that the ordinances do not apply to pools that are closed during the off-season because the pool was not an artificial body of water for swimming. G.A.C. notes the ordinance that the jury did find it violated, the water clarity ordinance, requires the pool owner to maintain a certain level of clarity "at all times." They argue that under the ordinances, when the pool is closed and drained, the water clarity ordinance does not apply. We agree with G.A.C.'s claim that § 5.79.090 (lifesaving equipment), § 5.79.100 (first aid equipment), and § 5.79.130 (water clarity) do not apply when the pool is closed. Under the facts, however, there is a question of whether the fence was adequate and whether the accumulation of murky water contributed to the injury because rescuers were unable to see Aaron, who was underneath the water. City Code § 7.40.044 (nuisances) and § 5.79.110 (control of access to a closed pool) do apply.

G.A.C.'s next assertion is that the city ordinances which apply do not provide a private cause of action. It contends the ordinances are designed to protect the public at large, not individuals. Violation of an ordinance, by itself, does not establish negligence per se. The plaintiff must also establish that an individual right of action for injury arising out of the violation was intended by the legislative body that passed the ordinance. Ordinances enacted to protect the public, therefore, do not create a duty to individuals injured as a result of a violation of the ordinances. In *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 371-72, 819 P.2d 587 (1991), this court determined that a statute requiring reporting of suspected child

abuse incidents did not support a negligence per se claim by a child who was abused.

In *Schlobohm v. United Parcel Service, Inc.*, 248 Kan. 122, 127, 804 P.2d 978 (1991), a city building code which set the maximum elevation differential between the landing and the top of the threshold in a building entrance was determined to have been enacted to protect a special class of individuals, *i.e.*, those individuals entering and leaving the building. Under the facts of this case, the swimming pool ordinances were enacted to protect a special class of persons—those who gain access to a closed pool and require rescuing, a class which included Aaron. Violation of the ordinances by G.A.C. could support a claim of negligence per se. Two of the ordinances here, § 7.040.044 and § 5.79.110, are analogous to those in *Schlobohm*, and the rationale of *Schlobohm* is sufficient to affirm the trial court on this issue.

G.A.C., however, contends that because Aaron was a trespasser, and not an invitee as in *Schlobohm*, this removed him from the class meant to be protected by the ordinance and there could be no finding of negligence per se. G.A.C. notes no reported Kansas case has involved a negligence per se claim by a trespasser but offers a Maryland case, *Osterman v. Peters*, 260 Md. 313, 272 A.2d 21 (1971), for support. In *Osterman*, a four-year-old boy attempted to retrieve a ball from a neighbor's swimming pool, fell in, and drowned. The city code required a particular type of gate latch which was not installed on the gate to the neighbor's pool. The Maryland Supreme Court refused to allow a trespasser, even one of tender years, to recover because the only right a trespasser has is to be free from any willful injury by the landowner.

G.A.C. contends that rule should be applied in this case. If applied, Aaron had no right to be in the pool area and cannot allege negligence per se. We note that the *Osterman* court observed, however, that Maryland is one of only seven states that completely reject the doctrine of attractive nuisance. 260 Md. at 315. Kansas has not rejected this doctrine. See *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978), *overruled on other grounds Bowers v. Ottenad*, 240 Kan. 208, 729 P.2d 1103 (1986);

see also *Honeycutt v. City of Wichita*, 247 Kan. 250, 262, 796 P.2d 549 (1990) (jury's determination of the comparative negligence of a minor in context of attractive nuisance).

The doctrine of attractive nuisance subjects a possessor of land to liability for bodily harm to children intruding thereon caused by some condition that the possessor maintains on the premises if:

" '(1) the possessor knows, or in the exercise of ordinary care should know, that young children are likely to trespass upon the premises, and

'(2) the possessor knows, or in the exercise of ordinary care should know, that the condition exists and that it involves an unreasonable risk of bodily harm to young children, and

'(3) the children because of their youth either do not discover the condition or understand the danger involved in coming into the dangerous area, and

'(4) one using ordinary care would not have maintained the condition when taking into consideration the usefulness of the condition and whether or not the expense or inconvenience to the defendant in remedying the condition would be slight in comparison to the risk of harm to children.' "

*Talley v. J & L Oil Co.*, 224 Kan. 214, 215-16, 579 P.2d 706 (1978) (quoting *Gerchberg*, 223 Kan. at 447-48).

Although we have refused to categorically exclude swimming pools from application of the attractive nuisance doctrine, we have recognized that in many cases swimming pools are not, as a matter of law, attractive nuisances. Factors that can be considered include whether the landowner knew children frequent the area where the pool is located and whether the condition of the pool is so unusual that the interest of the child is enticed. *McCormick v. Williams*, 194 Kan. 81, 82-84, 397 P.2d 392 (1964). The *McCormick* court specifically stated it was not sufficient that the minor was attracted to the nuisance *after* an act of trespass occurred; the minor must have been enticed onto the premises by the attraction of the nuisance. 194 Kan. at 84. In that case, the pool was enclosed by a fence and could not be seen until after the act of trespass.

In this case, the pool was visible, although there was a dispute whether people outside the fence could tell if water was in the pool. Aaron did not climb the fence because he was attracted to

the pool. He climbed the fence to retrieve his cap. The attractive nuisance doctrine is not applicable to the facts of this case as developed at trial. City Code § 5.79.110, which requires a reasonable method of control of access to a closed pool, presupposes that one who enters includes a trespasser. Under these facts, Aaron's status as a trespasser does not preclude submission to the jury of the negligence per se claim based on the two ordinances. The trial court's denial of G.A.C.'s summary judgment and directed verdict motions is affirmed.

Affirmed in part, reversed in part, and remanded for a new trial.

ABBOTT, J., not participating.

PRAGER, C.J. Retired, assigned. ∎

MCFARLAND, J., concurring: I concur in the result reached by the majority. I disagree with the rationale utilized to uphold the entry of summary judgment in favor of American Fence.

The district court granted summary judgment on the basis the action was barred by K.S.A. 1993 Supp. 60-513(b). The majority upholds the entry of summary judgment but applies K.S.A. 1993 Supp. 60-3303(b). I believe the rationale of the trial court was correct.

Under the allegation contained in the petition, American Fence was in this action wearing two hats: (1) installer of the fence and (2) manufacturer of the fencing material used in the installation. A different statute of limitation/repose applies to the two claims. The negligent installation claim is governed by 60-513(b). More than 10 years had passed between the time the fence was installed and the injury was received by Kerns. Thus, the installation claim was barred, as correctly held by the trial court, by 60-513(b).

The fabrication (manufacturing) claim is governed by K.S.A. 1993 Supp. 60-3302(c), (d) as it is a product liability claim. The product involved is ordinary standard gauge chain link fencing.

There is no evidence the fencing material was negligently manufactured or designed or that some component of the product was negligently installed in the manufacturing process. Thus, this claim fails for lack of evidence to support a product liability action. As noted by Justice Six in his concurring opinion, the duty to warn claim which is included in the claim against American Fence in its manufacturer's role fails because the product was not defective and did not injure the plaintiff, nor did it present a life-threatening hazard. See *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 861 P.2d 1299 (1993). Thus, there is no need to apply K.S.A. 1993 Supp. 60-3302(c), (d) on the product liability aspect of the claims against American Fence.

SIX, J., concurring: I concur in the result reached by the majority.

The summary judgment issue as to the Orindgreffs, however, is a close one. Oller was an employee of G.A.C., the corporate owner of the premises. The instructional relationship among the Orindgreffs, Oller, and G.A.C. will be of interest to the factfinder on remand. If the responsibility of maintaining the pool at the time of injury was placed with Oller as G.A.C.'s employee, the Orindgreffs may be free of liability.

The admission of collateral source benefits evidence was material. The case is remanded for a new trial. Consequently, syllabus paragraphs eight and nine and the corresponding portions of the majority opinion are not required.

During oral argument, counsel for Kerns advanced *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 861 P.2d 1299 (1993), as support for Kerns' continuing duty to warn claim asserted against American Fence. *Patton* was decided after the trial court's ruling. The fence neither injured the plaintiff nor "present[ed] a life-threatening hazard." See *Patton*, 253 Kan. at 759. The post-sale duty to warn recognized in *Patton* is not applicable under the facts in the case at bar.